**TRI–STATE ENVELOPE OF MARYLAND, INC., Plaintiff,**

v.

**AMERICANS WITH HART, INC., Defendant,**

**The National Bank of Washington, Garnishee.**

Civ. A. No. 87–862 SSH.

United States District Court, District of Columbia.

July 1, 1988.

Francis J. Collins, Alan P. Zukerberg, Baltimore, Md., for plaintiff.

Joel M. Mitnick, Washington, D.C., Louis B. Price, Baltimore, Md., for defendant.

Kathleen W. Collins, Robert W. Hawkins, Washington, D.C., for garnishee.

## MEMORANDUM OPINON

STANLEY S. HARRIS, District Judge.

This action is before the Court on the garnishee's motion for summary judgment and plaintiff's cross-motion for summary judgment. Upon consideration of the motions, the pleadings filed in support of and in opposition thereto, and the entire record herein, the Court grants the garnishee's motion for summary judgment and denies plaintiff's motion for summary judgment.

### Background

On March 19, 1984, the defendant, Americans With Hart, Inc. (AWH), executed a promissory note whereby the garnishee, The National Bank of Washington (NBW), agreed to loan AWH up to $3.5 million (hereinafter the line of credit). That promissory note and three subsequent promissory notes between AWH and NBW were modified and consolidated into one debt pursuant to an agreement dated February 6, 1986. All four of the notes and the modification and consolidation agreement incorporated the terms of a security and loan agreement dated March 19, 1984. Pursuant to the March 19, 1984, security and loan agreement, AWH granted NBW a security interest in several categories of designated collateral. The collateral described by the security and loan agreement included, among other items, all of AWH's inventory, which included 106 prints by Robert Rauschenberg and payments from any fund-raising events held by AWH. The Rauschenberg prints also were described as collateral in a separate security agreement between AWH and NBW dated February 8, 1985. NBW held the prints in its possession.

The plaintiff, Tri–State Envelope of Maryland, Inc. (Tri–State), was awarded a judgment against AWH in the amount of $133,648.96, in the United States District Court for the District of Maryland on August 11, 1986. On that date, Tri–State served a writ of attachment on NBW to which NBW responded and confessed $1,241.47. NBW subsequently made payment to Tri–State in that amount.

As of November 10, 1986, AWH owed NBW $573,746.43. On November 20, 1986, AWH held a fund-raising event during which it raised $6,630 in donations and $2,000 from the sale of three of the Rauschenberg prints. Officials of NBW were present at the event and took possession of all the contributions made to AWH. Those funds, which consisted of cash and checks, remained in the possession of NBW officials until they deposited the funds in a night depository at an NBW branch office. The following day, Tri–State served a second writ of attachment upon NBW. In responding to the interrogatories served with the writ, NBW stated that it was not indebted to AWH, but that it held a perfected security interest in, among other items, the following:

(1) $6,630 in proceeds from the November 20 fund-raising event.

(2) $2,000 in proceeds from the sale of the Rauschenberg prints.

(3) The remaining Rauschenberg prints.

Additionally, NBW stated it possessed $563.56 from two of AWH's checking accounts and that it had set off that amount to reduce AWH's debt.

Following NBW's response to Tri–State's interrogatories, Tri–State filed a motion for judgment of condemnation as to the property and credits disclosed in NBW's response. The Court denied that motion. Subsequently, Tri–State and NBW filed cross-motions for summary judgment.

### Discussion

In its motion for summary judgment, Tri–State alleges that its writ may properly attach to four sources of funds:

(1) The proceeds from the fund-raiser.

(2) The proceeds from the sale of the three Rauschenberg prints and the unsold prints.

(3) The funds set off from AWH's checking accounts.

(4) The $3.5 million line of credit established by the original March 19, 1984, promissory note.

For the reasons that follow, the Court finds that each of these contentions is untenable.

■ First, the proceeds from the fund-raiser are protected by NBW's valid security interest in them. The March 19, 1984, security and loan agreement provides in pertinent part:

Debtor hereby assigns to Secured Party, and mortgages and grants to it a security interest in ...

\* \* \* \* \* \*

payments from any and all concerts or similar fund raising benefits.

The security and loan agreement between AWH and NBW adequately describes payments from fund-raising benefits as collateral for the loans extended to AWH. NBW's security interest in the fund-raising proceeds here at issue attached and perfected when NBW took possession of the

proceeds on November 20. D.C. Code §§ 28:9–203(1)(a), 28:9–304(1) (Supp.1987). The proceeds remained in NBW's unquestioned possession until November 26, when NBW simultaneously credited and debited the funds to AWH's account for the purposes of record keeping and compliance with federal election laws.[1] This transaction, by which the funds momentarily passed through AWH's account, did not constitute a lapse in NBW's perfected security interest in the funds.

Section 28:9–305 of the D.C. Code provides that perfection by possession continues only so long as possession is retained. For all the importance the term "possession" has on the rights of the parties to a security agreement, however, it is nowhere defined in the D.C. Code. *See* D.C. Code §§ 28:1–101 to 28:10–104. It appears that the District of Columbia adopted portions of the Uniform Commercial Code (UCC) as written by the drafters of the UCC, *see* D.C. Code § 28:1–101 (referring to statutory provisions as "Uniform Commercial Code"), and the drafters of the UCC did not define the term "possession." *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546, 551–552 (4th Cir.1972); *Cissell v. First National Bank of Cincinnati*, 476 F.Supp. 474, 491 (S.D. Ohio 1979). Therefore, the case law must guide us in supplementing the provisions of the Code. D.C. Code § 28:1–103 (1981).

Cases and commentators universally have noted that the primary purpose behind requiring creditors to take possession of certain collateral is to advise third parties that the debtor does not have unfettered use of, or control over, the collateral. *E.g., Hutchison v. C.I.T. Corp.*, 726 F.2d 300, 302 (6th Cir.1984); *Allegaert v. Chemical Bank*, 657 F.2d 495, 506 (2d Cir.1980); *Heinicke Instruments Co. v. Republic Corp.*, 543 F.2d 700, 702 (9th Cir.1976). *See also, e.g.,* 4 R. Anderson, *Uniform Commercial Code*, § 9–305:7 (1985); W. Hawkland, R. Lord, C. Lewis, *Uniform Commercial Code Series*, § 9–305:03 (1986). In the instant case, where the

---

1. *See* 2 U.S.C. § 432(h)(1) (1983).

transaction alleged to have destroyed NBW's perfected security interest was at most a transaction by which the funds momentarily passed through AWH's account, and the funds never left the bank or were made available for AWH's use, there was no chance that third parties would be misled to believe that the debtor, AWH, had control of the funds. Therefore, the purpose that possession serves in perfecting a security interest is not defeated by the Court's concluding that the transaction at issue did not amount to a lapse in possession. The transaction did not destroy NBW's perfected security interest and, therefore, the proceeds from the fund-raiser are protected by NBW's superior security interest in them.

■ Second, the Rauschenberg prints and any proceeds from the sale of those prints are protected by NBW's valid security interest in the inventory of AWH. Such inventory was described by the March 19, 1984, security and loan agreement between AWH and NBW, and, additionally, the prints were the subject of a separate security agreement dated February 8, 1985. Unquestionably, NBW perfected its security interest in the prints by obtaining possession of them in February of 1985. D.C. Code § 28:9–305 (Supp.1987). As for the proceeds from the sale of the prints, D.C. Code § 28:9–306(3)(c) (Supp.1987) provides for the continuous perfection of a security interest in proceeds when the security interest in the original collateral was validly perfected and appropriate action is taken within 10 days to perfect the security interest in the proceeds. As stated above, NBW had a perfected security interest in the prints, the original collateral, and NBW took possession of the proceeds from the sale of the prints within the ten-day period provided for in § 28:9–306(3)(c). Accordingly, NBW's security interest was continuously perfected. The Rauschenberg prints and any proceeds from the sale of those prints are, therefore, protected by NBW's superior security interest in them.

■ Third, Tri–State asserts that NBW wrongfully set off the funds in AWH's checking accounts against AWH's debt owed to NBW, making the funds unavailable to Tri–State to garnish. Tri–State argues that there is no common law right to setoff in the District of Columbia, or, alternately, that if such a right does exist it may be exercised only when the debt is matured and not upon mere default. The Court finds neither argument convincing. While no District of Columbia case or statutory provision specifically grants banks a right of setoff, this court has acknowledged the existence of such a right in the District of Columbia.

It is well established that a bank generally has the right to set off its debts to a customer, such as account balances, against debts owed to it by that customer because of other transactions. 5A *Mitchie on Banks and Banking* ch. 9, § 114 (1983). Moreover, this right does not have to be exercised before a writ of attachment is served by another creditor. The bank may exercise its right of setoff once a depositor's account is threatened by attachment.

*Baltimore and Assoc., Inc. v. Municipal Escrow and Title Co.*, 625 F.Supp. 1271, 1272 (D.D.C.1985). Accordingly, it does appear that there is a common law right to setoff in the District of Columbia. As for Tri–State's alternative contention, the District of Columbia Court of Appeals recently held that a bank properly asserted its right to set off funds in a customer's account when a promissory note between the customer and the bank provided for setoff upon default on the note by the customer. *Boyle v. American Security Bank*, 531 A.2d 1258 (D.C.1987). In the instant case, all four of the promissory notes executed by AWH contain a provision allowing NBW to set off all money owed by NBW to AWH upon default on the notes by AWH. There is no dispute that AWH was in major default on the debt. As in the *Boyle* case, NBW could exercise its right to setoff upon default. Therefore, NBW properly set off the funds in AWH's checking accounts pursuant to its common law right and the holding in *Boyle*.

■ The Court further finds that there is no merit in Tri–State's assertion

that NBW waived its right to setoff by honoring checks drawn on AWH's accounts after the accounts were garnished. Tri-State contends that this conduct by NBW, allegedly in collusion with AWH, amounts to fraud. The cases cited by Tri-State in support of this assertion either do not address fraud and waiver or do not concern facts analogous to those in the instant case. Moreover, Tri-State has not alleged or proven facts to support a finding of fraud. *See* Fed.R.Civ.P. 9(b). *See also Celotex Corp. v. Catrett*, 477 U.S. 3117, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (party seeking summary judgment always bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence that the party believes demonstrates the absence of a genuine issue of material fact). Evidence that merely shows that NBW honored checks drawn on AWH's account is not enough to demonstrate fraud, unless it would show that the funds NBW claims to have set off actually were available for AWH's benefit. For example, in *Walters v. Bank of America Nat. Trust & Savings Ass'n*, 9 Cal.2d 46, 69 P.2d 839 (1937), a garnishee bank claimed a right to set off the judgment debtor's account and purported to apply those funds to a debt owed to the bank by the debtor on a promissory note. In reality, however, the bank merely made a temporary credit to the payment of the note, then it recredited the full and exact amount of the setoff to the debtor's account and debited the note. During this transaction the bank honored checks drawn on the debtor's account. *See also Prudential Loan and Trust Co. v. Metzler*, 66 Or. 224, 133 P.2d 1191 (1913) (bank was held to waive right to setoff where, after garnishment, it honored checks made payable to judgment debtor that were drawn on account). There is no evidence to suggest such conduct on behalf of NBW. NBW, therefore, did not waive its right to setoff.

Finally, Tri-State asserts that on November 21, 1986, the time of the second garnishment, AWH had a line of credit for $3.5 million from NBW to which Tri-State's garnishment could attach. The Court questions whether Tri-State could garnish the line of credit even if it were in existence at the time of the garnishment. In any event, while it is true that the original promissory note executed by AWH on March 19, 1984, did extend a $3.5 million line of credit to AWH, this line of credit was terminated by later modifications to the agreement between AWH and NBW. Thus, by the time of Tri-State's garnishment, any line of credit extended to AWH under the original note had been long since extinguished and was unavailable to be garnished.

■ In addition to claiming priority over the funds of AWH held by NBW, Tri-State argues that NBW's agreement with AWH is invalid because it purportedly was made in violation of federal election laws. In support of its position, Tri-State cites a September 30, 1985, Report by the Federal Election Commission's (FEC) General Counsel that recommends that the FEC find reason to believe that NBW may have violated the law in connection with its loan to AWH. This recommendation, however, was rejected, as memorialized by a subsequent letter, dated October 29, 1985, from the General Counsel of the FEC to James Nelson, President of NBW, stating that the FEC voted to take no action on investigating NBW's loan to AWH and to close the FEC's file on this matter. Moreover, even if NBW's loan to AWH violated the federal election laws (and Tri-State has not established that NBW or AWH violated the federal election laws), the Court does not conclude that the security agreement underlying the loan was invalid.

Accordingly, the Court grants NBW's motion for summary judgment and denies Tri-State's motion for summary judgment.