In re Morris M. RAITON, Debtor.

Evelyn Anne Patricia RAITON,
Appellant,

v.

G & R PROPERTIES, a California Partnership, Forrest Gardner, Foremost Spring Company, Inc., and Morris M. Raiton, Appellees.

BAP No. CC–91–1069 VJMe.
Bankruptcy No. LA 89–04672 KM.
Adv. No. LA 89–1543 KM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 24, 1991.

Decided May 11, 1992.

John J. Gilligan, Long Beach, Cal., for appellant, Evelyn Anne Patricia Raiton.

David R. Haberbush, Los Angeles, Cal., for appellee, Morris M. Raiton.

Before VOLINN, JONES, and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Appellant appeals the grant of partial summary judgment to Debtor, avoiding Appellant's security interests in Debtor's partnership property and stock.

Debtor and Appellant are former spouses. Pursuant to their dissolution of marriage agreement, Debtor executed in favor of Appellant a note secured by Debtor's share in a partnership and by Debtor's stock securities. To protect Appellant's partnership security interest, Debtor and Appellant stipulated that a charging order on Debtor's partnership property be entered. With respect to the security interest in Debtor's stock, the court designated a third party to hold the stock certificates constituting Debtor's 50% interest in the corporation in escrow for Appellant. This third party was a general partner in Debtor's partnership and owner of the other 50% of the stock in Debtor's corporation. Subsequently, pursuant to the enforcement of a levy on Debtor's property, the third party, without consent of the appellant, delivered Debtor's stock certificates to the Internal Revenue Service (IRS) where they remain.

On March 7, 1989, Debtor filed under Chapter 11 and, pursuant to § 544,[1] sought to avoid Appellant's security interests in Debtor's partnership interest and stock. The bankruptcy court granted Debtor's summary judgment motion avoiding both of Appellant's security interests. We REVERSE the grant of summary judgment and REMAND this matter to the bankruptcy court for a trial on the merits.

### STATEMENT OF FACTS

Appellant Evelyn Raiton and Debtor Morris Raiton are former spouses. During their marriage they owned and operated two businesses: G & R Properties (G & R) and Foremost Spring Company, Inc. (Fore-most). G & R is a partnership formed between Appellant, Debtor, and Forrest Gardner (Gardner). Appellant, Debtor, and Gardner also formed Foremost. The community property interest of Appellant and Debtor in Foremost stock totaled 50%. The remaining 50% of the Foremost stock was owned by Gardner. The G & R partnership's main asset is a commercial building which houses the corporation Foremost as its primary tenant.

On August 19, 1986, Appellant and Debtor dissolved their marriage in state court in Orange County, California. As part of the division of property agreement, Debtor received the community property interest in the Foremost stock and, in return, Debtor executed a promissory note in favor of Appellant with a principal sum of $340,000. The first $140,000 of this note was secured by the Foremost stock certificates owned by the Debtor and the remaining $200,000 was secured by the Debtor's interest in G & R. On April 30, 1986, Debtor and Appellant executed a security agreement memorializing the above security agreements. As part of the dissolution of marriage, the court entered an order on August 19, 1986, in which Gardner was designated to act as escrow holder for Appellant of Debtor's Foremost stock. On that same date, the court also entered a charging order in favor of Appellant for Debtor's interest in G & R partnership. On September 17, 1986, more than two years prior to the filing of this bankruptcy case, Gardner received formal notice of the charging order and notice of his designation as escrow holder of the Debtor's stock.

To pay off Debtor's note, Gardner directed Debtor's partnership share of G & R's income to be paid to Appellant. When Foremost stopped paying rent to G & R on September 26, 1988, these payments ceased. Gardner held Debtor's Foremost stock certificates until, without advising Appellant, he delivered them to the IRS on January 25, 1989, pursuant to enforcement

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

of a levy on Debtor's property. The stock remains in the possession of the IRS.

Appellant filed a state court action for dissolution of the G & R partnership. On March 7, 1989, Debtor filed his Chapter 11 petition which stayed Appellant's action for dissolution.

On July 27, 1989, Debtor filed an adversary complaint seeking, *inter alia,* to avoid Appellant's security interests in Debtor's share of G & R partnership and Debtor's Foremost stock. The bankruptcy court granted Debtor's motion for summary judgment which sought to avoid Appellant's interests in Debtor's Foremost stock and partnership interests in G & R. The basis of the court's ruling was that because neither security interest was perfected under Article 9 of California's Commercial Code, the security interests could not survive Debtor's "strong arm" powers under § 544.

## ISSUES PRESENTED

1. Whether a lien existed on a debtor partner's interest in the partnership prior to the debtor's filing bankruptcy when a stipulated charging order was issued over two years prior to the date the debtor filed bankruptcy?

2. Whether perfection by possession ceases when an escrow holder entrusted with a creditor's collateral delivers it without authorization from that creditor to another party who claims an adverse claim to the collateral?

## STANDARD OF REVIEW

The proper standard of an appellate court reviewing a partial summary judgment is to view the evidence in the light most favorable to the non-moving party and then determine under a *de novo* standard (1) whether there is no genuine issue of material fact and (2) whether the moving party was entitled to judgment as a matter of law. *In re New England Fish Co.,* 749 F.2d 1277, 1280 (9th Cir.1984).

## DISCUSSION

Section 544 governs the power of the debtor in possession to avoid security interests. *See* § 1107(a) (a debtor in possession shall have all the powers of a trustee). Under § 544(a)(1), the trustee or debtor in possession stands in the shoes of a "hypothetical lien creditor whose lien arose on the day the bankruptcy petition was filed." *In re Wind Power Systems, Inc.,* 841 F.2d 288, 292 (9th Cir.1988). As a lien creditor, the debtor in possession possesses the right and power to avoid any lien claims or security interests which are unperfected on the date that the bankruptcy petition is filed. *Id.*

### A. CHARGING ORDER

■ Appellant contends that the charging order provided a superior lien over Debtor's hypothetical lien status. Debtor contends that the charging order did not create a lien under California Civil Procedure Code (CCPC) § 708.320(a) because Appellant failed to serve the charging order on all the partners and failed to file a motion for the charging order.

CCPC § 708.320 establishes who must be served with a motion for a charging order and the point at which a lien is created if a motion for a charging order is filed:

(a) Service of a notice of motion for a charging order on the judgment debtor and on the other partners or the partnership creates a lien on the judgment debtor's interest in the partnership.

(b) If a charging order is issued, the lien created pursuant to subdivision (a) continues under the terms of the order. If issuance of the charging order is denied, the lien is extinguished.

Cal.Civ.Proc.Code § 708.320 (West 1987).

Debtor contends that no lien was created by the charging order because all the partners in G & R were not served. In its conclusions of law, the bankruptcy court held that the partnership was not properly served because one of the partners was not served.

CCPC § 708.320(a) requires service on the "judgment debtor and on the other partners *or the partnership....*" (empha-

sis added)[2] That is, all the partners need not be served if there is service on the partnership.

Under CCPC § 416.40, service on a partnership is satisfied by service on "the person designated as agent for service of process ... or to a general partner or the general manager of the partnership...." Accordingly, service on all the partners is not required so long as a general partner other than the judgment debtor is served. In the present case, the partnership was served when Gardner, who is a non-debtor general partner, was served with the charging order. Therefore, the court erred in finding that the partnership was not properly served.

■ Debtor also contends that, pursuant to CCPC § 708.320, no lien can be created by a charging order unless notice of a motion for the charging order is served upon the partnership. Debtor's presumption that a separate motion is required for a charging order to become a lien is misplaced. In the present case, no separate motion was presented because both parties, Appellant and Debtor, stipulated to an agreement that such an order would be issued. Since both Appellant and Debtor agreed to the charging order as part of the division of property agreement in the dissolution of their marriage, requiring that a separate motion be brought on the existing charging order serves no purpose and constitutes a useless act. Debtor offers neither authority nor rationale to support the proposition that CCPC § 708.320 contemplates such a useless act.

It is well-established that, in cases involving notice, the law does not require a useless act. See *Adamson Companies v. Zipp*, 163 Cal.App.3d Supp. 1, 10, 210 Cal. Rptr. 165, 171 (1984); *Arcata Publications Group v. Beverly Hills Publishing Co.*, 154 Cal.App.3d 276, 280, 201 Cal.Rptr. 223, 225 (1984). Once the charging order was issued and served upon the partnership, the partnership acknowledged and followed the terms of the charging order when it paid Appellant from its profits. We find that CCPC § 708.320 does not require the use-less and redundant service of a motion for a charging order when the charging order is stipulated to by the parties and entered by the court.

*Creation of lien by a charging order.*

■ Appellant contends that the issuance of the charging order created a lien prior to the filing of bankruptcy. This contention is based upon case law decided prior to the enactment of CCPC § 708.320. Debtor argues that § 708.320(a) supersedes the prior law.

■ A charging order entered pursuant to California's Uniform Partnership Act § 15028 replaces a levy of execution and provides the judgment creditor with a lien on the partnership property. *Baum v. Baum*, 51 Cal.2d 610, 612–613, 335 P.2d 481, 483 (1959). Under case law decided prior to the enactment of CCPC § 708.320, courts have stated in dicta that the issuance of a charging order creates a lien on the debtor partner's partnership interest. *Taylor v. S & M Lamp Co.*, 190 Cal.App.2d 700, 710, 12 Cal.Rptr. 323, 329 (1961). This general rule has also been implied in decisions from other jurisdictions which have interpreted the identical provision. *See In re Stocks*, 110 B.R. 65, 67 (Bankr.N.D.Fla.1989); *In re Pischke*, 11 B.R. 913, 918 (Bankr.E.D.Va.1981); *Krauth v. First Continental Dev–Con, Inc.*, 351 So.2d 1106, 1108 (Fla.App.1977); *But see City of Arkansas City v. Anderson*, 242 Kan. 875, 752 P.2d 673, 684 (1988) (issuance and service of the charging order upon the partnership creates a lien on the debtor partner's partnership interest).

■ Contrary to the Debtor's contention, CCPC § 780.320(a) does not contradict this rule. Rather, both rules complement each other. CCPC § 780.320(a) applies when there is a motion for a charging order; it provides that if there is a motion for a charging order, the lien is created earlier than when there is no motion: that is, upon service of the motion for a charging order on the partnership. Here, CCPC § 780.-

---

**2.** The citation of CCPC § 708.320 in Debtor's brief omits the "or the partnership" clause.

320(a) does not apply because the Appellant and Debtor stipulated to issuance of the charging order. When there is no motion for the charging order, such as in the present case, a lien is created upon issuance of the charging order.

■ In the present case, a lien on Debtor's partnership interest was created by the issuance of the charging order on August 19, 1986. Under California Commercial Code (CCC) § 9301(1), this lien has priority over and is superior to security interests in the same properties if those security interests are unperfected as of the date when the charging order was issued. Moreover, this lien is superior to the debtor in possession's interest as a "hypothetical lien creditor." *In re Stocks*, 110 B.R. at 67. We conclude that the bankruptcy court erred when it avoided Appellant's security interest in Debtor's partnership interest.

## B. PERFECTION OF A SECURITY INTEREST IN STOCKS

Appellant contends that the court erred in avoiding her security interest in Debtor's Foremost stock because it was perfected at the time Debtor filed bankruptcy. This contention is based upon Appellant's argument that her security interest in stocks continued to be perfected at the time Debtor filed bankruptcy because Debtor had no control over the stocks.

**3.** The bankruptcy court made its ruling based upon California Commercial Code (CCC) § 9305. Prior to the 1977 change in the code, certificated securities were covered under CCC § 9305. However, after the creation and enactment of Article 8 in 1977, perfection of security interests in certificated securities was explicitly excluded from Article 9 and governed instead by Article 8. CCC § 9305 provides in pertinent part as follows:

A security interest in … instruments (*other than certificated securities*) … may be perfected by the secured party's taking possession of the collateral. (emphasis added)

The Official Comment to Uniform Commercial Code (UCC) § 9–305, which the California Commercial Code adopted, states as follows:

The definition of "instrument" in Section 9–105(1)(i) includes a certificated security and the perfection of security interests in all securities is governed by Section 8–321. Hence, certificated securities are expressly excluded from this section.

Debtor responds with two arguments: (1) Appellant never perfected stocks by possession; and (2) assuming that the stock certificates were perfected, perfection by possession by Appellant ceased when the IRS gained possession of Debtor's Foremost stock certificates.

*Perfection of Stock Certificates by Possession.*[3]

■ California Commercial Code (CCC) § 9305, which governs perfection by possession, provides in part as follows:

A security interest in … instruments (other than certificated securities), … may be perfected by the secured party's taking possession of the collateral. If such collateral … is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this division. …

Cal.Com.Code § 9305 (West 1990).

■ Under CCC § 9305, possession is effectuated when the collateral is physically transferred to the secured party or its agent or to a bailee who has been notified of the secured party's interest.

The stock certificates at issue in the present case constitute Article 8 certificated securities. *See F.D.I.C. v. W. Hugh Meyer & Assoc. Inc.*, 864 F.2d 371 (5th Cir.1989). Nevertheless, the California variation of UCC § 8–321 which addresses perfection by possession contains the identical provision found in UCC § 9–305:

A security interest is perfected by possession from the time possession is taken without relation back and continues so long as possession is retained, unless otherwise specified in this division. The security interest may be otherwise perfected as provided in this division before or after the period of possession by the secured party. Cal.Com.Code § 9305.

The official comment in CCC § 9305 states that the typical pledge of a certificated security is unaffected by the addition of Article 8. Therefore, applying CCC § 9305 instead of CCC § 8321 to the facts in the present case has no affect on the outcome.

Official Comment to U.C.C. § 9–305, which was adopted by the California Commercial Code, states:

> Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party....

U.C.C. § 9–305 Comment 2 (1977).

In the present case, Appellant alleges that Gardner was designated as the escrow holder of Debtor's stock certificates for Appellant and that Gardner acted as Appellant's bailee when he received notice of his status. Since Gardner had possession of the Debtor's stock, Appellant argues that her security interest was perfected when Gardner received notice of Appellant's interest in the stock. Debtor contends that Gardner never acted as bailee for Appellant, but instead acted as an agent for Debtor.

Viewing the evidence in the light most favorable to the non-moving party, the Appellant, it would be reasonable to infer that Gardner was Appellant's bailee. Since Gardner's role was relevant to determining whether perfection by possession was effectuated, a genuine issue of material fact exists with respect to perfection. Because a critical fact is subject to dispute it would be inappropriate to grant summary judgment to avoid Appellant's security interest in the stock based upon the grounds that the security interest was not perfected by possession.

*Effect of the IRS's Possession of Stock on Appellant's Perfection.*

■ Appellant contends that perfection by possession continues so long as a debtor does not exert control or possess the collateral. Debtor contends that perfection by possession ceases when actual possession ceases.

In the present case, resolving the issue of perfection turns on the definition of possession. Neither the Uniform Commercial Code nor the California Commercial Code define "possession." Therefore, it has been left to the courts to determine what constitutes possession. *See Tri-State Envelope of Maryland, Inc. v. Americans With Hart*, 688 F.Supp. 769, 711 (D.D.C.1988). The underlying policy behind perfection by possession is that possession of instruments by a third party coupled with the owner's lack of possession alerts prospective creditors that the ownership rights may be restricted or encumbered. *In re Copeland*, 531 F.2d 1195, 1204 (3rd Cir.1976); *See also Huffman v. Wikle (In re Staff Mortgage & Inv. Corp.)*, 550 F.2d 1228, 1230 (9th Cir.1977).

We conclude that once a debtor has parted with possession of the collateral and the secured party, personally or through an agent, obtains possession, perfection continues until the debtor exerts or regains control over the collateral. Here, there is no evidence that Debtor gained such control. To hold that simple loss of possession by the secured party per se invalidates the security interest would invite uncertainty if not injustice: a secured creditor would automatically lose its security interest which is dependent on possession whenever collateral is misplaced, converted, or wrongfully surrendered by the bailee to whom the collateral is entrusted.

■ Here, the stock is in the hands of the IRS, presumably claiming adversely to both Debtor and Appellant.[4] It would be a windfall and inequitable under these circumstances to allow the Debtor or someone claiming through him, such as the trustee, to profit from an adventitious event on which no one, not even a bona fide purchaser or attaching creditor, could have relied.[5]

Examining the evidence in the light most favorable to the non-moving party, the Appellant, it could be reasonable to infer that

**4.** In any event, we note that while the IRS is aware of these proceedings, it has not been made a party nor has it taken part in the controversy between Appellant and Appellee.

**5.** Justice Douglas wrote that the construction of the Bankruptcy Code should not "enrich unsecured creditors at the expense of secured creditors, creating a windfall by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 608–609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1960).

Gardner, as escrow agent for Appellant, intentionally or mistakenly breached his fiduciary duty to hold Debtor's Foremost stock. As previously indicated, Gardner had recognized his fiduciary duty to Appellant by forwarding partnership profits to her. Since Appellant's security interest in the stock was based on possession and her interest therein recognized by Gardner, his unauthorized surrender of the stock to the IRS on the record before us is open to question.

## CONCLUSION

With respect to the charging order, we find that a valid lien was created upon Debtor's interest in the partnership by the issuance of the stipulated charging order. With respect to the perfection of the Appellant's interest in Debtor's stock, there is a genuine issue of material fact as to whether Debtor actually regained control over the collateral.

We REVERSE the grant of partial summary judgment avoiding Appellant's security interests in Debtor's partnership and stock certificates and REMAND this matter to the bankruptcy court for further proceedings consistent herewith.