**In re CLINTON HOSPITAL ASSOCIATION, Debtor.**

**Bankruptcy No. 92–40696 JFQ.**

United States Bankruptcy Court, D. Massachusetts.

July 21, 1992.

Sherrill R. Gould, Gould Law Offices, Littleton, Mass., for Clinton Sav. Bank.

Frank J. Bailey, Sherin and Lodgen, Boston, Mass., for debtor.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Clinton Savings Bank (the "Bank") moves for relief from the automatic stay in order to foreclose upon and liquidate its security interest in the Clinton Hospital Association Endowment Securities Account (the "Account") maintained with Shawmut Bank, N.A. as managing agent (the "Agent"). Clinton Hospital Association (the "Debtor") contends that the Bank failed to: (i) obtain a security interest in the Account because of a faulty description, and (ii) perfect any security interest which it might have obtained. Set forth here are my findings of fact and conclusions of law.

Prior to the hearing on the present motion, I heard the Debtor's emergency motion seeking the release of $200,000 from the Account for the purpose of paying operating expenses. I granted the requested relief and as adequate protection for the consequent decrease in the Bank's asserted security interest I granted the Bank a lien on the Debtor's accounts receivable.

## I. FACTS

The facts are undisputed. On October 24, 1967, the Debtor entered into an agreement with a predecessor of the Bank under which the Bank obligated itself to hold,

invest and manage property deposited with it by the Debtor. Although the Bank assumed "complete management of investments," it agreed that it would "obtain approval of all proposed purchases and sales from the Finance Committee of the [Debtor]." All securities in the account were to be registered in the name of a nominee, Merrill & Co., care of the Bank's trust department. Income was to be paid to the Debtor on a monthly basis. The Debtor reserved the right to revoke the arrangement at any time upon notice in writing.

In November of 1989, the Debtor entered into discussions with the Bank to obtain a loan secured by the Account. The Account at that time was entirely encumbered by a security interest held by the Agent to secure various loans which the Agent, in its capacity as a commercial lender, had made to the Debtor. The market value of the Account was then about $1,350,000. The Agent agreed to reduce its security interest in the account to a value of $750,000 in order to permit the Debtor to grant the Bank a security interest in the balance of the Account to secure the proposed loan. On November 29, 1989, the Bank loaned the Debtor $690,000 in return for the Debtor's promissory note in that amount.

On that same date, the Debtor signed a security agreement securing all present and future obligations to the Bank. The body of the security agreement described the collateral as "the property listed on the attached Exhibit 'A', together with any additions to or substitutions for said property and any and all proceeds of the same." Exhibit "A" contains the following description:

Remaining interest in the so-called Endowment Securities Account of Clinton Hospital presently held by Shawmut Worcester County Bank, N.A., as custodian, account # 10–04–024–6089000, over and above the $750,000.00 presently pledged to Shawmut Worcester County Bank, N.A.

No financing statement was filed with the Town of Clinton or the Secretary of the Commonwealth. As additional security, the Debtor gave the Bank a first mortgage on two real estate properties. The present

motion seeks no relief with respect to these mortgages.

On November 22, 1989, a few days before the loan closing, the Debtor wrote to the Agent informing it that the Debtor's board of trustees had voted to authorize the Debtor to give the Bank a security interest in the value of the Account over $750,000, enclosing a copy of the certificate of vote. On November 29, 1989, the day of the loan, the Agent wrote to the Debtor acknowledging that $750,000 in value of the account had been "pledged" to secure debt due to the Agent in its lending capacity and that the balance of the account over $750,000 had been "pledged" to the Bank as security for indebtedness owed to it. The Agent in that letter also observed that as a result of these pledges, any withdrawal of principal would require approval from the lender affected and the lender's consent to a reduction in the collateral.

On March 11, 1992, the Debtor filed its petition with this court seeking relief under chapter 11 of the Bankruptcy Code. On that same date, the Bank delivered a letter to the Agent stating in part that "[w]e hereby take possession of the [A]ccount for the purpose of perfecting our security interest therein to the extent of our outstanding debt of $739,091.76, with any all [sic] accrued interest due therefrom."

The present assets of the Account consist of stocks, bonds and a money market fund (presumably consisting of deposit accounts) having a value of about $950,000. The securities are all certificated securities. The Debtor cannot write checks against the Account. At the present time, approximately $650,000 of the Account is pledged to the Agent in its lending capacity. This leaves the value of the Bank's interest at about $100,000 after the $200,000 withdrawal permitted by the court's prior order.

## II. CREATION OF SECURITY INTEREST

■ The Account is an agency arrangement created by the Debtor for the purpose of having its investments managed by a professional investment manager. The parties' agreement concerning the Account

makes it abundantly clear that the Agent's capacity is indeed that of an agent. Unlike a trustee, the Agent could purchase or sell securities only upon the prior approval of the Debtor. No third party is granted a beneficial interest. The Debtor therefore continues to own the entire legal and beneficial interest in the assets of the Account even though they are registered in a street name.

■ A security, either certificated or uncertificated, is defined as a "share, participation or other interest in property of an enterprise of the issuer or an obligation of the issuer." Mass.Gen.Laws ch. 106, § 8–102(1)(a) and (b). The certificated stocks and bonds in the account clearly come within this definition. A certificated security is an "instrument," which is defined as "a negotiable instrument, as defined in section 3–104, or a certificated security, as defined in section 8–102(1)(a), or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment." Mass.Gen.Laws ch. 106, § 9–105(1)(i).

■ The Debtor contends that no security interest was ever created in the Account because the description of collateral contained in the security agreement was insufficient. The Debtor says that there should have been some description of the securities and other items in the Account on November 29, 1989. I disagree.

Mass.Gen.Laws ch. 106, § 9–203 provides in part:

> Subject to ... section 8–321 on security interests in securities ... a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless ... the debtor has signed a security agreement which contains a description of the collateral."

Under § 8–321, "[a] security interest in a security is enforceable and can attach only if it is transferred to the secured party or person designated by him pursuant to a provision of subsection (1) of section 8–313." Section 8–313(1) in turn provides in part:

> Transfer of a security or a limited interest, including a security interest therein to a purchaser occurs only:
>
> .     .     .     .     .
>
> (h) with respect to the transfer of a security interest where the debtor has signed a security agreement containing a description of the security, at the time a written notification, which, in the case of the creation of the security interest, is signed by the debtor, which may be a copy of the security agreement ... is received by ... a financial intermediary on whose books the interest of the transferor in the security appears.

■ A "financial intermediary" is a "bank, broker, clearing corporation, or other person, or the nominee of any of them, which in the ordinary course of its business maintains security accounts for its customers and is acting in that capacity." Mass. Gen.Laws. ch. 106, § 8–313(4). The Agent clearly qualifies under this definition. The Debtor's letter to the Agent of November 22, 1989 constitutes the requisite notification of the security interest under the statute.

■ The question remains whether the collateral description meets the "description of the security" required under § 8–313. Article 8 contains no guidance on the type of description required. I therefore rely upon the analogous requirement under Article 9. Section 9–110 provides that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The comment to the statute explains: "Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test." To require that the security agreement contain a specific listing of the securities in the Account would therefore be opposed to the wording and intent of section 9–110. Nor would such a requirement make practical sense in view of the shifting content of the Account.

The Account itself was well identified, including even its number. That is enough.

## III. PERFECTION

■ The Debtor argues in the alternative, first, that the Account consists of a general intangible in which a security interest can be perfected only by filing. My conclusion that the Account and its contents constitute securities disposes of that contention. The Debtor, nevertheless, says that even if perfection could be accomplished through possession rather than filing, the Bank has failed to take the steps required under §§ 9–304 and 9–305 to perfect a security interest in an instrument by possession. These sections, however, expressly exclude from their coverage instruments which are certificated securities. We are dealing here with certificated securities.

Section 8–321 governs the perfection of a security interest in certificated and uncertificated securities. "A security interest so transferred [under § 8–313(1) quoted above] pursuant to an agreement by a transferor who has rights in the security to a transferee who has given value is a perfected security interest." Mass.Gen.Laws ch. 106, § 8–321(2). To make the point abundantly clear, the statute goes on to provide that "no filing is required to perfect the security interest." § 8–321(3)(a).

■ The Debtor is therefore misguided in its reliance upon the requirement of possession under §§ 9–304 and 9–305. Even if these statutes applied, however, the Bank has obtained the required possession. Section 9–305 provides in part: "If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest." It is true the official comment states: "[I]t is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party." But the comment goes on to say: "Where the collateral (except for goods covered by a negotiable document) is held by a bailee, the time of perfection of the security interest, under the second sentence of the section [the quoted sentence], is when the bailee receives notification of the secured party's interest: this rule rejects the common law doctrine that it is necessary for the bailee to attorn to the secured party or acknowledge that he now holds on his behalf." This latter sentence may dispense with any test of control where the agent is in possession of the collateral at the time the security agreement is signed. In any event, the Agent here can hardly be described as one under the control of the Debtor. It is an independent financial institution. The Agent's letter of November 29, 1989, moreover, stresses its independence in stating the Agent would take no action which would be inconsistent with the security interest held by either the Bank or itself in its lending capacity.

■ In addition to securities, the Account contains a money market fund of some undisclosed value which presumably consists of deposit accounts. The creation of a security interest in a deposit account is not governed by the Uniform Commercial Code. Mass.Gen.Laws ch. 106, § 9–104(*l*). Under Massachusetts common law, perfection of a security interest in a deposit account can be accomplished only through possession of the documents necessary to make withdrawals from the account. *Heffernan v. Wollaston Credit Union*, 30 Mass.App.Ct. 171, 567 N.E.2d 933, 935–936 (1991). The Agent was of course in possession of such documents. For the reasons set forth above, that possession is sufficient with respect to collateral governed by the Uniform Commercial Code. Research discloses no Massachusetts decision dealing with the possession by an agent of the documents necessary for withdrawal from a deposit account. The underlying principle, however, is the same as that controlling sections 9–304 and 9–305. For the reasons set forth above, therefore, I conclude that the Agent's possession was also sufficient for perfection of the Bank's security interest in the deposit accounts.

■ If any portion of the money market fund consists of certificates of deposit, the certificates are "instruments." Mass. Gen.Laws ch. 106, §§ 9–105(1)(i) and 3–104(2)(c). A security interest in instru-

ments is perfected by possession under sections 9–305 and 9–306 previously discussed.

The decision in *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Van Kylen (In re Van Kylen)*, 98 B.R. 455 (Bankr.W.D. Wis. 1989), is distinguishable. *Van Kylen* involved uncertificated securities. Moreover, the agreement there permitted the debtor to direct the stockbroker handling the account to allocate any portion of the account to a checking account, thereby giving the debtor direct access to the account at any time. That is not the case here. Not only did the Debtor have no right to draw checks on the Account, the Agent required that any withdrawal be done with the consent of the secured party affected.

The Debtor has argued only the lack of validity and perfection of the Bank's security interest in the Account, without contending that the Debtor's consumption of the Account would not deprive the Bank of adequate protection of its security interest. This is understandable because adequate protection principles would obviously require a freezing of the Account unless other adequate security is offered.

A separate order has therefore issued granting the Bank relief from the automatic stay with respect to the Account. Today's order is without prejudice to whatever rights the Bank may have for relief from the automatic stay with respect to its real estate mortgages or its security interest in accounts receivable.