**In re Edward RICHMAN and Ilene H. Richman, Debtors.**

**Michael WOLFF, Ch. 7 Trustee, Plaintiff,**

**v.**

**FWB BANK, Defendant.**

Bankruptcy No. 92–1–3241–SD.
Adv. No. 93–1–A–196–DK.

United States Bankruptcy Court, D. Maryland.

April 25, 1995.

Roger C. Simmons, Gordon & Simmons, Frederick, MD.

Martin P. Schaffer, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, MD, for debtors.

Michael G. Wolff, Gaithersburg, MD, for trustee.

Arnold S. Albert, Washington, DC, for FWB Bank.

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT IN FAVOR OF FWB BANK

DUNCAN W. KEIR, Bankruptcy Judge.

The court has before it Cross Motions for Summary Judgment filed by FWB Bank ("FWB") and the Chapter 7 trustee. The parties request this court to summarily decide whether FWB has a perfected security interest in the debtors' account at Shearson Lehman Brothers, Inc., (hereinafter, the Shearson account). The funds from the Shearson account are currently held in escrow in the Bankruptcy Court registry as required by Order dated August 10, 1993. After a review of the facts as set forth by the parties, it appears that there is no genuine issue of material fact, thus summary judgment is appropriate. FRBP 7056(c); *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir.1990); *In re Schroeder*, 173 B.R. 93, 94 (Bankr.D.Md.1994).

### UNDISPUTED FACTS

As consideration for an extension of a Maturity Date on an already executed loan, the debtors agreed to pledge their account at Shearson Lehman Brothers, Inc. to the extent of $125,000.00. At closing, the debtors executed a Hypothecation Agreement, which states, in pertinent part, the following:

In consideration of and to induce FWB Bank to extend the Maturity Date of that certain loan in the amount of Four Hundred Forty–Eight Thousand Five Hundred Eighty–Five Dollars and Five Cents ($448,585.05) (the "Loan") to Edward Richman and Ilene H. Richman (hereinafter the "Borrower"), and to partially release that certain deed of trust and Security Agreement, dated September 22, 1989, as modified securing the Loan, the Borrower hereby:

1. pledges with the Bank and grants the Bank a security interest in the property described in Exhibit A attached hereto and by this reference made a part hereof, belonging to the Borrower, together with the proceeds thereof (the "Collateral") as secu-

rity for the payment of all indebtedness
. . .

Exhibit A states as follows:

All of the Borrower's right, title and interest in and to any amounts on deposit in the account held by the Borrower with Shearson Lehman Brothers, Inc. designated Account No. 6282588026038, together with all interest now or hereafter earned thereon and the proceeds thereof, to the extent of $125,000.00.

Attached to the Hypothecation Agreement was a page providing for an acknowledgement by Shearson Lehman. It states as follows:

The undersigned, Shearson Lehman Brothers, Inc., hereby acknowledges receipt of notification of the existence of the foregoing Hypothecation Agreement in favor of FWB Bank, on this ___ day of May, 1991. We will mark our records appropriately and agree to recognize the interests of FWB Bank in Account No. 6282588026038 [the Shearson Account] held by the [Richmans] (the Account) and do further agree that any right of set off we may or hereafter have in reference to the Account and the proceeds thereof is hereby expressly subordinated to FWB Bank's interests in such accounts. We further agree to freeze the funds in the Account to prevent the aggregate from falling below the value of $125,000.00.

Shearson Lehman Brothers, Inc.
By: _____
(Title)

FWB sent the Hypothecation Agreement and acknowledgement to Shearson Lehman Brothers, Inc.; however, the acknowledgement was never signed by an authorized representative of Shearson.

In addition to the facts stipulated above, the debtors submitted a copy of their Preferred Client Statement, as provided by Shearson, listing the contents of the Account for the period April 1, 1991 through June 30, 1991. At the time of the execution of the Hypothecation Agreement, the debtors' Shearson account contained stocks in the value of $371,231.25, and bonds in the value of $290,827.45, with a small amount of options, rights and warrants and a de minimis amount of money funds. Against these holdings, the debtors had an outstanding margin debt of $483,058.16, leaving a net value in the assets held in the account of $181,236.97.

## PROCEDURAL HISTORY

The court's ruling in the instant adversary proceeding will conclude the dispute regarding disposition of the Shearson account, which dispute pre-dates the filing of the bankruptcy petition.

On January 29, 1992, FWB Bank filed an action against the debtors in Circuit Court for Montgomery County, Maryland alleging default of a deed of trust note, breach of contract and fraud. As part of its complaint, FWB Bank sought a Writ of Attachment before Judgment for Garnishment of the Shearson account. An Order of Garnishment and waiver of the bond requirement were subsequently entered. Subsequently, the debtors filed a counter complaint which provides the basis for a lender liability claim still pending in Circuit Court for Montgomery County.

On February 27, 1992, the debtors moved to dissolve the garnishment. At a hearing held on March 12, 1992, the state court denied the Motion to Dissolve and treated the garnishment as an *ex parte* injunction.

Thereafter, on May 29, 1992, the debtors voluntarily filed their Chapter 11 petition. FWB Bank filed an adversary proceeding, No. 92–A–332, to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(A), alleging that the debtors fraudulently induced FWB Bank to modify the loan and that the debtors knew at the time they executed the Hypothecation Agreement that Shearson would not recognize the Agreement. Debtors filed an Answer and Counterclaim, alleging breach of contract, fraudulent inducement, intentional interference with business relations, violation of the Maryland Financial Institutions Article and violation of the Equal Credit Opportunity Act.

In Adversary Proceeding No. 92–A–322, this court, Judge E. Stephen Derby presiding, ruled as follows:

1. 523(a)(2)(A) count: Summary Judgment in favor of debtors because FWB failed to prove actual fraud and complaint dismissed.

2. Violation of Equal Credit Opportunity Act: Barred by applicable statute of limitations and dismissed.

3. All remaining state law counts: Abstention

Subsequently, the debtors filed a complaint for turnover of property of the estate, commencing this adversary proceeding. In that complaint, the debtors named FWB Bank and Shearson Lehman Brothers, Inc., as defendants. In its Answer, FWB alleged that FWB held a perfected security interest in the funds on two alternate theories: (a) perfection by Writ of Attachment dated 1/31/92 or (b) perfection under Article 8 of the Uniform Commercial Code. By Consent Order dated August 10, 1993, Shearson Lehman Brothers, Inc. was dismissed as a defendant and ordered to remit the funds at issue to the custody, control and possession of the Bankruptcy Court.

By Order dated February 23, 1994, Judge Derby denied Cross Motions for Summary Judgment, "without prejudice to reactivation of this adversary proceeding, including the filing of new motions for Summary Judgment, after the litigation between the parties now pending in the Circuit Court for Montgomery County, Maryland has concluded."

In his Memorandum Opinion on Cross Motions, Judge Derby ruled that "the Bankruptcy Court should not modify what the state court has done or be asked to overrule a state court order under state law. The fact is that the state court did not dissolve the garnishment, but rather treated it as an *ex parte* injunction on the same terms. If clarification is desired, it should be sought in Circuit Court for Montgomery County."

Thereafter, this adversary proceeding was stayed pending resolution of the state court attachment issues by that court.

■ On July 29, 1994, the Circuit Court for Montgomery County, Maryland, Thompson, J., entered a Memorandum Opinion and Order. In that Order, the court granted the Richmans' Motion to Dissolve the Garnishment. In addition, the court found that the *ex parte* injunction issued on March 12, 1992 had expired by its own terms in the beginning of April, 1992. Finally, the court granted summary judgment in favor of the debtors as to the fraud count of the original complaint. Judge Thompson's Order disposed of the attachment issues raised in the turnover action. This adversary proceeding was then reactivated to decide the remaining issue, *i.e.,* does FWB Bank have a perfected consensual lien upon the funds placed in the registry of this court by Shearson.[1]

On August 15, 1994, the debtors' bankruptcy case was converted to a case under Chapter 7. Michael Wolff was appointed trustee, and thus succeeded the debtors as plaintiff in this adversary proceeding. The court held a hearing on renewed cross motions on the issue. Although the debtors have no standing in this action, as the trustee now stands as the plaintiff, the court permitted the debtor to argue on the motion. In this Memorandum Opinion, the court makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In order for FWB Bank to prevail on its motion for summary judgment, FWB must establish that on the date of the petition instituting the bankruptcy case it held a perfected lien, against the proceeds of the Shearson account, sufficient to have priority under state law over a judicial lien executed upon said account at the time of the bankruptcy petition. 11 U.S.C. § 544(a)(1). If

---

1. FWB's attempt to obtain a judicial lien did not vitiate its rights as the alleged holder of a consensual lien. Upon default, a secured party may proceed to reduce its claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. Md.Code Ann.Com.Law I § 9–501 (1992). If a party holding such a consensual security interest proceeds to reduce the claim to judgment and execute thereupon, the date of the lien obtained shall relate back to the date of the perfection of the security interest. UCC § 9–501(5).

the collateral in question is of a type governed by the Uniform Commercial Code as enacted in Maryland, FWB Bank must hold not only a security interest in the collateral, but also must have perfected that security interest prior to the date of petition. A holder of an unperfected security interest is subordinate to the rights of a judicial lien creditor, Md.Code Ann.Com.Law I (hereinafter "UCC") § 9–301(1)(b) (1992), and therefore, would not defeat the rights of the trustee pursuant to 11 U.S.C. § 544(a)(1).

In order to determine whether or not FWB held such a perfected security interest, the fundamental issue is to identify the type of collateral in which an interest was purportedly conveyed by the above quoted language in the Hypothecation Agreement.

Md.Code Ann.Com.Law I § 9–102 (1992) provides as follows:

§ 9–102(1) Except as provided in § 9–104 on excluded transactions, this title [UCC] applies

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts"; and also

(b) To any sale of accounts or chattel paper.

§ 9–102(2) This title applies to security interest created by contract, including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease, or consignment intended as security.

The Hypothecation Agreement executed by the debtors intended to create such a security interest. Furthermore, the debtors' property held at Shearson was personal property. Accordingly, unless that property is of a type excluded from coverage of the Uniform Commercial Code by UCC § 9–104, the issue of the creation and perfection of the security interest will be governed by the Uniform Commercial Code.

■ The only exclusion contained in UCC § 9–104 which arguably could apply to the transaction in question is to the transfer of an interest in any "deposit account." UCC § 9–104(l). Although the trustee in his memorandum argued in favor of this position, he abandoned the argument that this was a deposit account at the hearing on summary judgment. The court agrees that the exclusion for deposit account would not apply to the facts of this case.

A deposit account means a demand, time, savings, pass book, or like account maintained with a bank, savings and loan association, credit union, or like organization, other than an account evidenced by a certificate of deposit.

UCC § 9–105(1)(e).

In the case at bar, the debtors maintained an "account" at the stockbrokerage firm of Shearson Lehman Brothers, Inc. ("Shearson"). For two reasons, the Shearson account is not a "deposit account" as defined by the Uniform Commercial Code and therefore not excluded from that Code's coverage. First, Shearson is not a bank or like organization, but rather a stockbroker. *Matter of Van Kylen,* 98 B.R. 455, 461 (Bankr. W.D.Wis.1989). In addition, the account contained virtually exclusively securities, not cash balances. Unlike a deposit account at a financial institution in which the depositor holds only a *chose in action* as the creditor of the institution, *Id.* at 460, under the facts of this case, the debtors held an ownership interest in securities in street name and held for the debtors by the brokerage house. For these reasons, the exclusion set forth in UCC § 9–104(l) does not apply and as a result, the governing law is the Uniform Commercial Code.

■ In order to create a security interest generally, the debtors must have signed a security agreement which contains a description of the collateral, unless the secured party has possession of the collateral. UCC § 9–203(1)(a). Here the granting language set forth in the Hypothecation Agreement is clearly sufficient to act as a security agreement and it is uncontested that the debtors signed it. The description of the collateral is "all amounts on deposit in account no. 6282588026038 at Shearson." Although perhaps not artfully drawn, this description is

sufficient pursuant to UCC § 9–110, because it reasonably identified what was being pledged, *i.e.*, the contents of the Shearson account.

█ The court next must determine whether or not the security interest granted was perfected. In order to make the determination, the court must find which of the categories of collateral type defined in the Uniform Commercial Code includes the collateral described in the Hypothecation Agreement. The debtors assert that what was pledged was the right to withdraw funds from Shearson, which the debtors maintain was a distinctly different property interest than the stocks held in the account. Debtors concede that the "account" at Shearson is not an Account as defined in UCC § 9–106 because the rights are not to payment for goods sold or leased, or for services rendered. Counsel for the debtors argues that these rights are general intangibles, the "catch all" category for "any personal property (including things in action and uncertificated general limited partnership interests), other than goods, accounts, chattel paper, documents, instruments, and money" as defined in UCC § 9–106. If this court were to agree with the debtors, the trustee would prevail in this action. In order to perfect a security interest in general intangibles, the secured party must have filed financing statements with the requisite authorities. UCC § 9–302(1). There is no dispute that financing statements were never filed.

Instead, this court agrees with the analysis set forth in the case of *In re Clinton Hospital Association*, 142 B.R. 601 (Bankr.D.Mass. 1992). In that case, the court was faced with the same issue of determining the type of collateral pledged where a security agreement granted a security interest in "remaining interest in the so-called endowment securities account of Clinton Hospital presently held by Shawmut Worcester, County Bank, N.A., as custodian, account no. 10–04–024–6089000, over and above the $750,000.00 presently pledged to Shawmut Worcester County Bank, N.A." *Id.* at 603. The assets of the account consisted of stocks, bonds and a money market fund. The court held that the security interest was created in the contents of the account where the account itself was well identified, including its account number. *Id.* at 605.

Likewise in the instant case, the Agreement identified the brokerage account by specific number. The contents of the debtors' Shearson account are set forth in detail at pages two through four of the April 1–April 30, 1991, Preferred Client Statement. Each of the stocks listed thereon was traded through a recognized exchange or over the counter. These stocks were held in street name by Shearson as a financial intermediary.

> A "financial intermediary" is a bank, broker, clearing corporation or other person (or the nominee of any of them) which in the ordinary course of its business maintains security accounts for its customers and is acting in that capacity. A financial intermediary may have a security interest in securities held in account for its customer.

UCC § 8–313(4).

This is an exact description of the relationship by and between Shearson and the debtors. Shearson held the securities in an account for the debtors and they were subject to a security interest in favor of Shearson for its outstanding margin loan balance.

Although certificated securities are instruments as defined in UCC § 9–105(1)(i), UCC § 9–304(1) specifically excludes certificated securities from the requirement of perfection by possession by the secured party. Instead, UCC § 9–302(1)(f) indicates that perfection of securities (both certificated and uncertificated) is governed by UCC § 8–321.

Md.Code Ann.Com.Law I § 8–321 (1992) provides as follows:

> A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of § 8–313(1).

UCC § 8–313(1) lists various methods by which transfer may occur. FWB argues that the transfer occurred in accordance with UCC § 8–313(1)(h) which provides as follows:

With respect to the transfer of a security interest where the debtor has signed a security agreement containing a description of the security, at the time a written notification, which, in the case of the creation of the security interest, is signed by the debtor (which may be a copy of the security agreement) or which, in the case of the release or assignment of the security interest created pursuant to this paragraph, is signed by the secured party, is received by: (i) a financial intermediary on whose books the interest of the transferor in the security appears.

As recited in the agreed upon facts, a copy of the Hypothecation Agreement was sent by FWB to Shearson, thus satisfying the requirement of notification to the financial intermediary. Such notification caused a transfer of the security interest in the securities in the Shearson account to FWB and perfection of that security interest by such transfer. *In re Clinton Hospital* at 604.

This decision by the court, finding that this was a pledge of the securities in the hands of Shearson as a financial intermediary, comports with the policy of the Uniform Commercial Code. The UCC provides for different means of perfection depending upon which category of collateral is pledged. The manner of perfection is intended to be consistent with the logical expectation and practical experience of those engaged in commercial transactions. Md.Code Ann.Com.Law I § 9–302 cmt. 1 (1992).[2] For example, as negotiable instruments are generally transferred by negotiation involving the making of any necessary endorsement and the physical possession of the instrument, the UCC requires (with limited exception) that the secured party obtain possession in order to perfect. UCC § 9–301(1). Where there is a specific governmental licensing registry, the UCC allows the exclusive means of perfection to be a filing with that registry, such as the Mary-

land Vehicle Administration, the U.S. Coast Guard for documented vessels, or the Maryland Department of Natural Resources for Maryland permitted vessels. Where the collateral is of a type that is not subject to such registration or practice requiring possession in order to obtain an interest, the Code provides for perfection by the filing of a notice (financing statement) in public registries, such as for inventory, accounts and intangibles.

As to securities, the Code provides that the perfection occurs where a transfer is accomplished in accordance with the dictates of UCC § 8–313 which reflect the practices of the industry. Where securities are held by a financial intermediary, such as a broker, the industry expectation is that such financial intermediary must be put on notice of interests granted in those securities. The requirements of UCC § 8–313(1)(h) reflect this expectation. Md.Code Ann.Com.Law I § 8–313 cmt. 2 (1992).

If the debtors' argument prevailed and the collateral was found to be a general intangible, the UCC would not require that any notice or knowledge be given to Shearson, as the perfection would be only by filing financing statements. This court concludes that this result would not conform to the policy of the Uniform Commercial Code, nor be in conformity with the practices of parties generally involved in the stream of commerce with this type of margin account.

■ Two issues remain to be resolved. FWB requested that Shearson sign an acknowledgement of the Hypothecation Agreement and, in that acknowledgement, to subordinate any interest which Shearson held in the securities to the security interest of FWB. Shearson refused to execute the acknowledgement. While this refusal prevented the subordination of Shearson's security interest in the contents of the account for its

2. Md.Code Ann.Com.Law I § 9–302 cmt. 1 (1992) provides as follows:

1. Subsection (1) states the general rule that to perfect a security interest under this Title a financing statement must be filed. Paragraphs (1)(a) through (1)(g) exempt from the filing requirement the transactions described. Subsection (3) further sets out certain transactions to

which the filing provisions of this Title do not apply, but it does not defer to another state statute on the filing of inventory security interests. The cases recognized are those where suitable alternative systems for giving public notice of a security interest are available. Subsection (4) states the consequences of such other form of notice.

margin loan, it did not prevent the perfection of the security interest in favor of FWB. Some authorities have suggested that such acknowledgements are at least prudent, if not necessary, to the perfection of interests taken in uncertificated securities held by a bailee. However, FWB should not be penalized for any preventive measures it attempted to take, where legally not required. *See* Md.Code Ann.Com.Law I § 9–408 (1992).

■ Finally, the debtors argue that failure by FWB to comply with Regulation U, 12 C.F.R. § 221 (1987), invalidated the transaction. Regulation U was created to prevent an end run by investors around the restrictions on margin accounts imposed after the market crash of 1929. The Court of Appeals for the Fourth Circuit has succinctly set forth the purpose of § 7 of the Securities Exchange Act:

> The main purpose of these margin provisions in section 6 is not to increase the safety of security loans for lenders. Banks and brokers normally require sufficient collateral to make themselves safe without the help of law. Nor is the main purpose even protection of the small speculator by making it impossible for him to spread himself too thinly—although such a result will be achieved as a byproduct of the main purpose.
>
> The main purpose is to give a Government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market and out of other more desirable uses of commerce and industry—to prevent a recurrence of the pre-crash situation where funds which would otherwise have been available at normal interest rates for uses of local commerce, industry, and agriculture, were drained by far higher rates into security loans and the New York call market.

*Stern v. Merrill Lynch, Pierce, Fenner & Smith,* 603 F.2d 1073, 1075 fn. 7 (4th Cir. 1979) (quoting H.R.Rep. No. 1383, 73d Cong., 2d Sess. 7–9 (1934)).

Investors may not simply go to a financial institution and borrow funds in excess of that which they could borrow on the margin at a broker for the purpose of purchasing or maintaining margin stock. Here, the purpose of the credit was not to enable the borrower to purchase the margin stocks or maintain the margin stocks at Shearson. The loan was a land development loan which was being extended in consideration of an additional pledge of collateral, *i.e.,* the securities at Shearson. An examination of the regulation discloses that such a land development loan is not restricted or prohibited by Regulation U.

Regulation U may have required FWB to report the outstanding loan, since it appears to require all loans secured by margin stock to be reported. However, the failure to report the transaction would only invoke whatever sanctions the Federal Reserve Board sought fit to impose. It would not automatically create a forfeiture of the security. The trustee's reliance on *In re March,* 995 F.2d 32 (4th Cir.1993) is misplaced. In that case, a violation of Virginia law rendered a loan transaction void *ab initio.* That holding is inapposite, where the pledge in the instant case was not prohibited by the regulation.

Finally, the funds in the registry of this court represent the direct traceable proceeds of the securities pledged from the Shearson account as set forth above. The collateral description in the Hypothecation Agreement includes proceeds and 11 U.S.C. § 552(b) specifically allows post-petition continuation of a pre-petition security interest in proceeds. For these reasons, this court finds and concludes that FWB Bank held, on the date of filing of the petition and holds today, a perfected security interest in the funds in the registry of this court.