637 So.2d 11 (1994)
FIRST BANK OF IMMOKALEE, a Florida banking corporation, Appellant,
v.
ROGERS NK SEED COMPANY, Appellee.
No. 93-02210.
District Court of Appeal of Florida, Second District.
May 6, 1994.
John E. Spiller of Boardman & Thompson, P.A., Immokalee, for appellant.
Robert W. Groth of Franke & Groth, P.A., Naples, for appellee.
ALTENBERND, Judge.
The First Bank of Immokalee (First Bank) appeals an order declaring that its security interest in certain stock owned by Precision Agricultural Products, Inc. (Precision), is inferior to the judgment lien of Rogers NK Seed Company (Rogers). We conclude that First Bank's security interest under section 678.321, Florida Statutes (1989), is superior *12 to Rogers' judgment lien. Accordingly, we reverse the order on appeal.
Precision borrowed $200,000.00 from First Bank on July 30, 1990. To secure this obligation, Precision signed a security agreement listing 50,000 shares of ATNN Inc. and 118,000 shares of Non-Invasive Monitoring Systems, Inc., as collateral. First Bank did not file the security agreement in the method used to perfect a security interest in many types of personal property. See § 679.302, Fla. Stat. (1989). Because the stock was in the possession of Precision's broker, F.N. Wolf & Co., Inc. (F.N. Wolf), First Bank wrote to F.N. Wolf on July 30, 1990, and advised that Precision had assigned these shares of stock as collateral for the loan. The letter enclosed a copy of the promissory note and the security agreement. A few days later, F.N. Wolf sent a reply, refusing to "hold the securities in trust for anyone other than our client," but offering to assist in a physical transfer of stock certification if that was the desire of Precision. First Bank apparently did not respond to this letter.
In January 1992, Rogers obtained a judgment in the amount of $291,359.37 against Precision. In supplementary proceedings, Rogers discovered the existence of these publicly listed stocks held by Precision's broker and began efforts to sell them to satisfy its judgment. First Bank then intervened in the supplementary proceedings to establish the priority of its security interest.
After an evidentiary hearing, the trial court ruled that First Bank's security interest was not perfected because the security agreement had not been filed and because First Bank had failed to take possession of the stock as suggested by F.N. Wolf. Accordingly, it ordered that the stock be sold and that Rogers have a first priority to the proceeds of the sale. The stock was sold for approximately $150,000.00, and the proceeds have been deposited into the court's registry pending this appeal.
Security interests in stock are perfected under rules that do not apply to most other types of property. Section 678.321(1), Florida Statutes (1989), provides that a security interest in stock is enforceable and can attach only if the security interest is "transferred" to the secured party or its designee pursuant to a provision of section 678.313(1). "A security interest so transferred pursuant to agreement by a transferor who has rights in the security to a transferee who has given value is a perfected security interest... ." § 678.321(2), Fla. Stat. (1989). Although such a security interest is subject to the provisions of chapter 679, no filing is required to perfect the security agreement. § 678.321(3)(a), Fla. Stat. (1989); cf. Finizio v. Shubow, 557 So.2d 640 (Fla. 4th DCA 1990) (agreement pledging securities to secure payment of final judgment gave judgment creditor an enforceable security interest).
Thus, to resolve this case, one must determine when the security interest was "transferred" to First Bank. Section 678.313(1)(h), Florida Statutes (1989), provides, in pertinent part, that the "transfer" of such a security interest occurs
at the time a written notification ... (which may be a copy of the security agreement) ... is received by:
1. A financial intermediary on whose books the interest of the transferor in the security appears;
By definition, F.N. Wolf is a "financial intermediary." § 678.313(4), Fla. Stat. (1989).
It is undisputed that First Bank provided F.N. Wolf with a copy of the signed security agreement with its notification letter on July 30, 1990. Thus, a transfer of the security interest in the stock occurred when F.N. Wolf received the written notification. Cf. In re Southmark Corp., 138 B.R. 820 (Bankr. N.D.Tex. 1992) (perfection occurred when financial intermediary received notice of pledge agreement).
Despite its efforts in the reply, F.N. Wolf had no ability to decline or prevent the transfer that resulted from its receipt of the notification. As explained in the Official Reasons for the 1977 Change to the Uniform Commercial Code:
Subparagraph (h), limited to the transfer of a security interest, deals with the situation where a security interest, pursuant to written agreement, is perfected by notice to a bailee under Section 9-305. Unlike a transfer under subparagraph (d), (e) or (f) *13 of subsection (1), Section 9-305 does not require confirmation or acknowledgment by the controlling party, but only the receipt of notice. Subparagraph (h) provides that a transfer is effective when notice is received and further identifies the party to be notified.
Section 9-305 provides:
If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.
Thus, the reply from F.N. Wolf did not alter the date upon which First Bank perfected its security interest in this stock. Because the judgment was recorded long after that date, First Bank's security interest has priority over Rogers' judgment lien.
Reversed and remanded.
CAMPBELL, A.C.J., and SCHOONOVER, J., concur.