In re James M. FISCHER, Jr., Debtor.

### THIRD NATIONAL BANK IN NASHVILLE, Plaintiff,

v.

### James M. FISCHER, Jr., Defendant.

Bankruptcy No. 92–06305.
Adv. No. 395–0028A.

United States Bankruptcy Court,
M.D. Tennessee.

July 18, 1995.

---

Paul E. Jennings, Jennings Lane & Ramer, Nashville, TN, for debtor.

Bradley A. MacLean, Farris Warfield & Kanaday, Nashville, TN, for Third Nat. Bank of Nashville.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

Third National Bank in Nashville ("TNB") instituted the above captioned adversary proceeding against James M. Fischer, Jr. ("Debtor") asking for a declaratory judgment that it possesses a perfected security interest in the proceeds from the sale of Debtor's Standard Candy Company, Incorporated ("Standard") stock. The Debtor filed a Motion for Summary Judgment asserting that, not only did TNB fail to perfect a security interest in the proceeds of the Standard stock, but that TNB never perfected an interest in the stock itself. A hearing was held on the motion for summary judgment on June 6, 1995. For the reasons stated herein, the Court denies the Debtor's motion for summary judgment. The following constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

### II. FACTS

The Debtor filed his Chapter 11 petition on July 21, 1992. On December 29, 1994 the Debtor gave notice of his intention to sell his 50% interest in the Standard stock for total consideration of $1,750,000.00 pursuant to 11 U.S.C. § 363. The Court approved the sale free and clear of liens, with the security interests of First American National Bank ("FANB") and The Bank of Nashville ("TBON") attaching to the proceeds. TNB remained silent during the pendency of the sale and the subsequent order approving the sale. Following the payment of claims to FANB and TBON, the Debtor realized a net amount of approximately $425,000.00. TNB asserts a perfected security interest in the remaining proceeds from the sale as a result of a Security and Pledge Agreement between it and the Debtor dated February 19, 1991.

The relevant provisions of the Security Agreement state:

> In the event of the sale of substantially all of the Secured Party's interest in the Standard Candy Company (the "Company"), whether by sale of stock or assets (the "Interest"), Pledgor shall convey to Secured Party, and hereby grants to Secured Party a security interest in, the proceeds of such sale payable to Pledgor in an amount equal to the lesser of (i) $250,000, or (ii) fifty percent (50%) of the proceeds of such sale, after deducting the amount Pledgeor is required to pay First American National Bank, which has a first lien on the Interest.

Pursuant to Tennessee law, specifically T.C.A. § 47–9–203 (Michie 1995), FANB took possession of the stock in order to perfect its interest in the Standard stock. The Debtor argues that TNB took a security interest only in the proceeds of the sale of the stock, but not the underlying stock, and that TNB failed to perfect its interest in the proceeds. TNB asserts that not only does it have a perfected interest in the stock, but also in the proceeds from the sale of the stock.

### III. DISCUSSION

#### A. Summary Judgment Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure 56, governing summary judgments, applies in adversary proceedings, Rule 56 provides as follows:

> The summary judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c) (1993). Rule 56(c) sets forth a two-pronged test: (1) whether there is a genuine issue of material fact for trial; and (2) whether the law entitles the moving party to a judgment in the absence of a genuine dispute of a material fact.

 The moving party always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings and/or discovery materials which demonstrate that there is no genuine disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that initial burden, the burden is shifted to the nonmoving party to go beyond the pleadings, and by his own affidavits, depositions, answers to interrogatories, and admissions designate specific facts showing that a genuine issue of fact does remain for trial. *Id.* at 324, 106 S.Ct. at 2553.

 The Sixth Circuit has interpreted the *Celotex* decision to mean that "the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). A party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. *Street*, 886 F.2d at 1478. If after a sufficient period of discovery, the opposing party is unable to "put up" credible evidence, by way of affidavit or otherwise that a genuine issue of fact exists on a critical issue, then summary judgment is appropriate. *Street*, 886 F.2d at 1478.

The Court finds that no genuine issue of material fact remains to be resolved at trial. The sole question, therefore, is whether the Debtor is entitled to summary judgment as a matter of law.

### B. TNB's Security Interest

 State law controls the method of perfection of the Standard stock. Secured transactions in certificated securities are governed as to creation, perfection and termination by Title 47, Chapter 48. *See* T.C.A. § 47–8–321 Comment 1. (Michie 1992 & Supp.).[1] In other words, Tennessee Code Annotated Section 47–8–321 replaces T.C.A. § 47–9–305 with respect to perfection of certificated securities.[2] Stock certificates qualify as securities.[3] Article 8, as codified, spe-

---

**1.** *But see In re Raiton*, 139 B.R. 931 (9th Cir. BAP 1992). The Ninth Circuit Bankruptcy Appellate Panel held that even though the 1977 Amendments to the U.C.C. (adopted in California, effective January 1, 1985) transferred coverage of security interests in stocks from Article 9 to Article 8, the bankruptcy court's reliance upon § 9–305 to decide whether a security interest in stock was perfected by possession, had no effect on the outcome. The California variation to § 8–321(2) contains language identical to that what appears in § 9–305. Moreover the official comment to § 9–305 states that the typical security pledge is unaffected by the addition of Article 8 to the Code. *See also In re Bragiel*, 151 B.R. 186 (Bankr.N.D.Ill.1993) (holding Article 9, not 8, governed the question of the perfection of a security interest in shares of a lawyer's professional corporation inasmuch as such shares cannot be issued to anyone not authorized to provide the professional services of in a type commonly traded).

**2.** T.C.A. § 47–8–102 is the definitional statute with respect to Chapter 8 of Title 47. The following definitions are relevant to the present discussion:

(a) A "certificated security" is a share, participation, or other interest in property of an enterprise of the issuer or an obligation of the issuer which is:

(i) represented by an instrument in bearer or registered form;

(ii) of a type commonly dealt in or securities exchanges or markets or commonly recognized in any area which it is issued or dealt in as a medium for investment; and

(iii) either one (1) of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations....

(c) A "security" is either a certificated or an uncertificated security. If a security is certificated, the terms "security" or "certificated security" may mean either the intangible interest, the instrument representing that interest, or both, as the context requires. A writing that is a certificated security is governed by this chapter and not by chapter 3 of this title, even though it also meets the requirements of that chapter....

T.C.A. § 47–8–102 (Michie 1992 & Supp.).

**3.** *See In re Fund Raiser Prods. Co., Inc.*, 163 B.R. 744 (Bankr.E.D.Pa.1994). A security interest in an investment security can be perfected by possession under the U.C.C. before and after the 1977 amendments to the U.C.C. Under § 9–305,

cifically addresses the enforceability and perfection of security interests in investment securities.[4] T.C.A. § 47–8–313 governs when a "transfer" of a security occurs, and is relevant to perfection under T.C.A. § 47–8–321 which states that perfection occurs simply when a "transfer" is effected. T.C.A. § 47–8–313(1)(h) provides that a transfer occurs:

(h) with respect to the transfer of a security interest where the Debtor has signed a security agreement containing a description of the security, at the time a written notification which, in the case of the creation of the security interest, is signed by the Debtor (which may be a copy of the security agreement) or which, in the case of the release or assignment of the security interest created pursuant to this paragraph, is signed by the secured party, is received by:

(i) a financial intermediary on whose books the interest of the transferor in the security appears;

(ii) a third person, not a financial intermediary, in possession of the security, if it is certificated;

(iii) a third person, not a financial intermediary, who is the registered owner of the security, if it is uncertificated and not subject to a registered pledge; or

(iv) a third person, not a financial intermediary, who is the registered pledgee of the security, if it is uncertificated and subject to a registered pledge;

a security interest in an "instrument" can be perfected by possession. "Instruments" are defined by U.C.C. § 9–105 to include securities as defined by § 8–102. Case law construing § 8–102 holds that "securities" include stock. The definition of security was expanded by the 1977 Amendments to the U.C.C. to include both certificated and uncertificated securities, and perfection may still be achieved by possession as accomplished through §§ 8–313 and 8–321. *Id.* at 748–49.

4. Tennessee Code Annotated § 47–9–305 recites in material part:
*When possession by secured party perfects security interest without filing.*—A security interest in letters of credit and advances of credit (subsection (2)(a) of § 47–5–116), goods, *instruments,* negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. *If such*

T.C.A. § 47–8–313(1)(h) (Michie 1992 & Supp.). T.C.A. § 47–8–321 controls perfection and provides:

**47–8–321. Enforceability, attachment, perfection and termination of security interests.**—(1) A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of § 47–8–313(1).

. . . . .

(3) A security interest in a security is subject to the provisions of chapter 9 of this title, but:

(a) no filing is required to perfect the security interest; and

(b) no written security agreement signed by the Debtor is necessary to make the security interest enforceable, except as provided in § 47–8–313(1)(h), (i), or (j). The secured party has the rights and duties provided under § 47–9–207, to the extent they are applicable, whether or not the security is certificated, and, if certificated, whether or not it is in his possession.

(4) Unless otherwise agreed, a security interest in a security is terminated by transfer to the Debtor or a person designated by him pursuant to a provision of § 47–8–313(1). If a security is thus transferred, the security interest, if not terminated, becomes unperfected unless the security is certificated and is delivered to the Debtor for the purpose of ultimate sale or

**collateral** other than goods covered by a negotiable document *is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.* A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained. . . . (emphasis added).
T.C.A. § 47–9–305 (Michie 1992). The same result occurs under Article 8 as codified in Tennessee through the provisions of T.C.A. § 47–8–313 and § 47–8–321. *See also In re Crabtree,* 48 B.R. 528 (Bankr.E.D.Tenn.1985) (holding perfection by giving notice to bailee could perfect a junior lienholder's security interest in Debtor's stock certificates and debentures under T.C.A. § 47–9–305 before the adoption of Article 8 by the Tennessee legislature in 1986).

exchange or presentation, collection, renewal, or registration of transfer. In that case, the security interest becomes unperfected after twenty-one (21) days unless, within that time, the security (or securities for which it has been exchanged) is transferred to the secured party or person designated by him pursuant to a provision of § 47–8–313(1).

T.C.A. § 47–8–321 (Michie 1992 & Supp.). Implicit in these provisions is the principle that a security interest transferred in accordance with T.C.A. § 47–8–313(1) is a perfected security interest pursuant to T.C.A. § 47–8–321.

▪ T.C.A. § 47–8–313(1) provides the exclusive means by which legal rights in securities can be transferred from one entity to another. Subsection (h) of § 47–8–313 is analogous to § 47–9–305, which provides the rule for perfecting a security interest in property in the possession of a bailee. Section 313(h) describes the notification procedure to perfect, and requires that upon the creation of a security interest, a security agreement signed by the Debtor be executed which adequately describes the collateral. T.C.A. § 47–8–321 then states that once the requirements of § 47–8–313(1) are met, perfection has occurred. Whether TNB has a perfected interest in the stock or proceeds of the sale of the stock is to be determined in accordance with these provisions.

▪ In order for a junior lienholder to perfect its interest in stock which has previously been pledged as collateral to another secured party, the junior lienholder must comply with the conditions of T.C.A. § 47–8–313(1)(h). That provision has several prerequisites: (1) that there be a security agreement signed by the Debtor; (2) that the security agreement contain a description of the collateral; (3) that written notification be given of the creation of the security interest to the appropriate party; and (4) a determination of the appropriate party for notification in accordance with § 47–8–313(1)(h)(i)-(iv). With respect to whom is to receive notification, subsection (h)(i)-(iv) makes explicit that if the transferor's interest is in an account with a financial intermediary, that intermediary is the proper person to receive notice of the transfer regardless of whether it has physical possession or registration in its own name or whether it has securities in an account with another intermediary. The notification to the "bailee" must be written and signed by the Debtor, but may simply be a copy of the security agreement.[5]

In the present case, there is no dispute that FANB was the proper party to receive notice, and that TNB gave notice to FANB of the creation of a security interest in favor of TNB in the Standard Stock. This notification must have included indication of a security agreement which adequately described the collateral. The Debtor does not dispute that TNB gave notice to FANB of the creation of its security interest, but asserts that if TNB does in fact have an interest in the stock, rather than just the proceeds from the sale of the stock, then that interest is not perfected because the security agreement does not adequately describe the collateral. If the security does not adequately describe the collateral, then no perfection of TNB's interest occurred, because under the provisions of T.C.A. § 47–8–313(h), no transfer has occurred.

T.C.A. § 47–8–*101 et seq.* does not give any indication as to what constitutes an "adequate description." Other courts addressing what that phraseology means have used similar provisions of U.C.C. Article 9 as adopted in the respective jurisdiction. The description must "make possible the identification of the thing described." *In re Belmont Indus.,* 1 B.R. 608, 613 (Bankr.E.D.Tenn.1979) (quoting Official Comment to U.C.C. § 9–110); *see also In re Clinton Hospital Ass'n,* 142 B.R. 601, 604 (Bankr.D.Mass.1992) (because Article 8 contains no guidance on the type of description required, courts may rely upon the analogous requirement under Article 9).

▪ The 1991 Security Pledge and Security Agreement does contain an adequate description of the collateral for purposes of T.C.A. § 47–8–313(h)(1). The Agreement clearly identifies the collateral pledged as the Standard Company stock, and

---

5. *See* Official Comments to T.C.A. § 47–8–313 (Michie 1992 & Supp.).

the proceeds from the sale of that stock.[6] Therefore, the Court finds that TNB did, in fact, adequately describe its interest in the underlying stock certificates. Because all of the requirements of T.C.A. §§ 47–8–313 and 47–8–321 were met by the Debtor, a "transfer", and hence "perfection" did occur with respect to the Standard stock.[7]

The Debtor asserts, however, that even if TNB did have a perfected security interest in the underlying Standard stock, that TNB did not perfect its interest in the proceeds generated from the sale of that stock, or that TNB's interest in the proceeds became unperfected by TNB's failure to reperfect as to the proceeds within the applicable time frame.

 Because the sale occurred postpetition, federal bankruptcy law controls TNB's perfection in the proceeds of the Standard stock. Section 552 of the Bankruptcy Code governs the post-petition effect of a security interest. That provision recites as follows:

> **§ 552. Post-petition effect of security interest.**
>
> \* \* \* \* \* \*
>
> (b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the Debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the Debtor acquired before commencement of the case and the proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (Clark Boardman Callaghan 1994). Generally, in bankruptcy a secured creditor's interest is limited to his interest in the Debtor's property on the date of filing. 11 U.S.C. § 552(a) cuts off the effect of after-acquired property clauses found in security instruments. Section 552(b) provides, as an exception, a security interest in proceeds, profits, offspring, product, and rents of secured property to the extent that the security document allows perfection, and other applicable non-bankruptcy law allows perfection.

 The interaction between §§ 552(b) and 363 defines TNB's interest in the proceeds of the Standard stock. Section 552(b) states "except as provided in 363," TNB's perfected security interest in the stock continues in the proceeds, as is provided in the 1991 Security Agreement. Under

---

6. *See In re Fund Raiser Prods., Inc.,* 163 B.R. 744, 748–49 (Bankr.E.D.Pa.1994) (holding that under U.C.C. §§ 8–321 and 9–305 perfection via an agent is contemplated and possession by agent perfected junior holder's lien in the Debtor's stock); *First Bank of Immokalee v. Rogers NK Seed Co.,* 637 So.2d 11 (Fla.App.Ct.1994) (holding bank's interest was perfected at the time it gave "written notification" of the creation of its security interest in stock which Debtor had pledged to another despite the financial intermediary's notice that it refused to hold any stock for the bank's benefit since the consent of the financial intermediary is not required); *F.D.I.C. v. W. Hugh Meyer & Assocs., Inc.,* 864 F.2d 371, 374 (5th Cir.1989) (holding possession by an agent perfected Bank's security interest in securities).

7. In his motion for summary judgment, the Debtor also relied upon T.C.A. § 47–9–203(a). That provision of the Tennessee Code provides:

 **47–9–203. Attachment and enforceability of security interest—Proceeds—Formal requisites.**—(1) Subject to the provisions of ... § 47–8–321 on security interests in securities ... a security interest is not enforceable against the Debtor or third parties with respect to the collateral and does not attach unless:

 (a) the collateral is in the possession of the secured party pursuant to agreement, or the Debtor has signed a security agreement which contains a description of the collateral....

 T.C.A. § 47–9–203 (Michie 1992 & Supp.). This provision does not create any new prerequisites that are not already included in the provisions of T.C.A. § 47–8–313(1)(h). In other words, if the secured party has complied with T.C.A. § 47–8–313(1)(h), that entity has met the requisites set forth under T.C.A. § 47–9–203. Furthermore, this section is to be read and understood in light of T.C.A. § 47–8–321 which contemplates, through T.C.A. § 47–8–313, the ability of a secured party to achieve perfection by notification of a bailee of the creation of a security interest.

§ 552(b), therefore, TNB has a perfected security interest in the Standard stock proceeds. The only remaining issue is whether § 363 "provides otherwise." To this query, the Court must answer in the negative.

 The law is fairly well-settled that "an order confirming a sale of assets is considered a final judgment." *Cedar Island Builders, Inc. v. South County Sand & Gravel, Inc. (In re Cedar Island Builders, Inc.),* 151 B.R. 298 (D.R.I.1993); *In re Met–L–Wood Corp.,* 861 F.2d 1012 (7th Cir.1988), *cert. denied, Gekas v. Pipin,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *In re Shary,* 152 B.R. 724 (Bankr.N.D.Ohio 1993). Generally, following the applicable appeal period, Rule 60(b) of the Federal Rules of Civil Procedure is the sole means, with the exception of bringing an independent action, to set aside a final order confirming a § 363 sale.

TNB does not seek to set aside the order of this Court which "blessed" the § 363 sale of the stock. Even though TNB did not actively participate in the sale, no provision of § 363 acts to "provide otherwise" to negate TNB's perfected security interest in the stock sold. TNB's security interest simply transferred to the proceeds by means of § 552(b) absent any objection raised by TNB to the sale. Section 552, therefore protects TNB's interest in the proceeds.

### IV. CONCLUSIONS

The Court concludes that TNB did have a properly perfected security interest in the Standard stock, and that TNB's interest continued in the proceeds following the postpetition sale of the stock. For all of the foregoing reasons, the Court must, therefore, deny Debtor's motion for summary judgment. Although the Court finds that no genuine issue of material fact is in dispute, and the only questions resolved were questions of law, only the Debtor has filed for summary relief. Had TNB filed a motion for summary judgment, the Court could have dispositively concluded of this adversary proceeding. Given the current procedural posture of this case, however, the Court simply denies the Debtor's motion for summary judgment.

It is, THEREFORE, so ordered.