*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 07b0007n.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: ROBERT E. PARKER,

                                    Debtor.

_____

JOHN J. MUELLER,

        Appellant,

v.                                                                          No. 06-8053

HOWARD KEITH HALL,
MICHAEL LUCAS, and LUCAS & HALL,

        Appellees.

_____

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky, Pikeville Division
Case No. 02-74320

Argued: February 7, 2007

Decided and Filed: May 10, 2007

Before: AUG, PARSONS, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** John J. Mueller, Cincinnati, Ohio, for Appellant. Cynthia L. Effinger, SEILLER WATERMAN, Louisville, Kentucky, for Appellees. **ON BRIEF:** John J. Mueller, Cincinnati, Ohio, for Appellant. Cynthia L. Effinger, David M. Cantor, SEILLER WATERMAN, Louisville, Kentucky, for Appellees.

## OPINION

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. The bankruptcy court found attorney John J. Mueller ("Mueller") in contempt for the willful violation of an order approving the sale of the debtor's legal malpractice claim and imposed sanctions on him in the amount of $2,000. Mueller contends on appeal that the bankruptcy court lacked personal jurisdiction over him, that the sale order was void, that the sale order did not definitely and specifically command him to refrain from performing any particular act, and that he did not violate the sale order. While we conclude that Mueller waived the jurisdictional argument and the sale order is not subject to collateral attack, we agree that the order of sale was not properly a basis for a finding of contempt and that Mueller's conduct was not contemptuous. As such, the bankruptcy court's order of contempt and sanctions award will be reversed.

### I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred in finding Mueller in contempt of the order approving the sale of the legal malpractice claim and imposing sanctions on him for violating that order.

### II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order finding Mueller in contempt and imposing sanctions on him was a final order. A civil contempt order is final when "(1) a finding of contempt is issued, and (2) a sanction is imposed." *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R.

2

839, 843 (B.A.P. 6th Cir. 1998) (citing *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 39 F.3d 563 (5th Cir. 1994)).

"A decision on a contempt petition is within the sound discretion of the [bankruptcy] court and thus is reviewed only for an abuse of discretion." *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (citing *Peppers v. Barry*, 873 F.2d 967 (6th Cir. 1989)). Under this standard, the bankruptcy court's decision "will be disturbed only if [it] relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund*, 340 F.3d at 378 (quoting *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)). "An abuse of discretion is defined as a 'definite and firm conviction that the [bankruptcy court] committed a clear error of judgment.'" *Mayor & City Council of Baltimore, Md. v. West Virginia (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.,* 181 F.3d 759, 770 (6th Cir. 1999); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.*

"Jurisdictional determinations are reviewed de novo." *Singleton v. Fifth Third Bank of W. Ohio (In re Singleton)*, 230 B.R. 533, 535 (B.A.P. 6th Cir. 1999). "De novo means that the appellate court determines the law independently of the trial court's determination." *In re Ravenswood Apartments, Ltd.*, 338 B.R. 307, 310 (B.A.P. 6th Cir. 2006) (quoting *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)). *See also In re Mktg. & Creative Solutions, Inc.*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) ("De novo review means that the issue is decided as if it had not been heard before.") (citing *In re Downs*, 103 F.3d 472 (6th Cir. 1996)); *Fields v. Sallie Mae Servicing Corp. (In re Fields)*, 326 B.R. 676, 678 (B.A.P. 6th Cir. 2005) ("De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination.") (quoting *In re Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)). "No deference is given to the trial court's conclusions of law." *In re Eastown Auto Co.*, 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998).

Similarly, determinations as to whether property forms a part of a bankruptcy estate are conclusions of law and reviewed de novo. *See, e.g.*, *In re Johnston*, 209 F.3d 611 (6th Cir. 2000) (Bankruptcy court's determination that earned income tax credit was included in property of the debtor's estate was a legal conclusion and reviewed de novo.); *In re Newpower*, 233 F.3d 922, 927 (6th Cir. 2000) ("Because the only question presented—whether the embezzled funds at issue and proceeds thereof are part of debtor's bankruptcy estate pursuant to 11 U.S.C. § 541—is a legal one, we review the bankruptcy court's decision de novo.").

## III. FACTS

In February 2002, a jury in the Kentucky Circuit Court for Pike County found Robert E. Parker ("Parker") and his wife liable to Parker's siblings in the amount of $165,000. On November 1, 2002, Parker, represented by attorney Thomas W. Goodman, Jr. ("Goodman"), filed for bankruptcy relief under chapter 7.[1]

On amended schedules filed in May 2003, Parker listed as an asset a "possible malpractice" claim. In 2004, the chapter 7 trustee filed a notice of abandonment of two legal malpractice claims, one against Howard Keith Hall, Michael Lucas, and Lucas & Hall (collectively "L&H"), the attorneys who had unsuccessfully defended Parker and his wife in the state court action, and the other against Goodman, who had advised Parker to file bankruptcy. Parker and his wife, represented by Mueller, then filed suit in state court against L&H for legal malpractice ("the L&H Suit"). Thereafter, upon motion by L&H, the bankruptcy court subsequently set aside the proposed abandonment by order entered May 9, 2005. Parker appealed this order but was unsuccessful.

After the revocation of the notice of abandonment, Parker and his bankruptcy trustee, also represented by Mueller, commenced a state court legal malpractice lawsuit against Goodman ("the Goodman Suit"). Thereafter, on July 19, 2005, in Parker's bankruptcy case, the trustee moved to sell the estate's interest in both the L&H and Goodman Suits at public auction pursuant to 11 U.S.C. § 363, a request the bankruptcy court granted. Following the auction, the trustee filed motions seeking approval of the auction sales. By orders entered September 8, 2005, the bankruptcy court

---

[1] Goodman represented Parker in bankruptcy until August 5, 2004, when Parker terminated his services.

approved the sale of the Goodman Suit to Lawyers Mutual Insurance Company ("Lawyers Mutual"), Goodman's malpractice carrier, for $10,000, and the sale of the debtor's interest in the L&H Suit to Lawyers Mutual, also L&H's malpractice carrier, for the sum of $10,200 ("the Sale Order"). Parker did not object to either sale and did not appeal the orders confirming the sales.

Notwithstanding the sale of the Goodman Suit, Parker and his attorney Mueller continued to prosecute the state court action against Goodman. To enjoin the continued prosecution, Goodman filed on November 29, 2005, an adversary complaint and motion for preliminary injunction against Parker and Mueller, which the bankruptcy court granted and then converted to a permanent injunction on February 23, 2006. Parker appealed the entry of the injunction to the United States District Court for the Eastern District of Kentucky, which affirmed the bankruptcy court's decision. Thereafter, Parker appealed to the Sixth Circuit Court of Appeals, where the issue awaits decision by that court.

With respect to the L&H Suit, Mueller wrote a responsive letter on January 11, 2006 to Michael Schmitt, Esq., attorney for L&H, stating in relevant part the following:

> I dispute that by purchasing the lawyer-malpractice claims the subject of this civil action, Lawyers Mutual Insurance Company (or [L&H]) have "effectively extinguished" Mr. Parker's lawyer-malpractice claims. Even if Trustee Robin Browning Brock had closed, or were to close, the bankruptcy case, I would still dispute that by purchasing the lawyer-malpractice claims the subject of this civil action, Lawyers Mutual Insurance Company (or [L&H]) would have, or will have, "effectively extinguished" Mr. Parker's lawyer-malpractice claims.[2]

> If Judge Coleman were to rule that by purchasing the lawyer-malpractice claims the subject of this civil action that Mr. Parker owned, Lawyers Mutual Insurance Company (and [L&H] have "effectively extinguished," or actually "extinguished," Mr. Parker's lawyer-malpractice claims, I would appeal that ruling as soon as the ruling was "ripe" for appeal.

> I plan to move forward with Ms. Parker's claims of lawyer malpractice. Ms. Parker's claims of lawyer malpractice constitute essentially the same claims as Mr. Parker asserted against [L&H]. . . .

---

[2] These statements were apparently in response to attorney Schmitt's comment that the purchase by Lawyers Mutual of the L&H Suit had "effectively extinguished" the claim. (Apt. App. 31.)

5

Please contact me if you have any questions, especially if you want to discuss how we should proceed to raise, and then to resolve, the issues in this civil action, relating to Mr. Parker's right to prosecute the lawyer-malpractice claim.

(Apt. App. 23).

On March 21, 2006, L&H filed a Motion for Contempt against Parker and Mueller, asserting as evidenced by Mueller's January 11 letter that they had continued to prosecute the L&H Suit in violation of the September 8, 2005 Sale Order. On April 11, 2006, Parker and Mueller filed a response, asserting that: (1) the Sale Order did not definitely and specifically command either Parker or Mueller to perform or refrain from performing any particular act and, thus, was not an order under which they could be found in contempt; and (2) neither he nor Parker had taken any step to prosecute the legal malpractice claim since the action was stayed by the state court on May 27, 2005.

After a preliminary hearing wherein the bankruptcy court also raised the possibility of an award of attorney's fees as a sanction pursuant to 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings, the court entered an order on April 25, 2006, directing Parker and Mueller to appear for hearing and show cause why they should not be held in contempt of court for the following misconduct alleged by L&H:

> Parker and Mueller have continued to prosecute and have demonstrated an intent to continue to prosecute the Pike Circuit Court action captioned *Robert E. Parker v. Howard Keith Lucas, Michael Hall and Lucas & Hall*. The continued prosecution of the Pike Circuit Court action by Debtor and Mueller is in violation of this Court's Sale Order dated September 8, 2005, in which the Bankruptcy Trustee sol[d] the entirety of the claims which comprise the Pike Circuit Court action to Lawyers Mutual Insurance Company, on behalf of the state court Defendants, for $10,200.00.

(Apt. App. 50.)

Prior to the scheduled hearing, Parker and Mueller filed a response to the show cause order which, in addition to the arguments raised in their response to the contempt motion, challenged the power of the bankruptcy court to remedy any breach of 11 U.S.C. § 363 by exercising contempt power pursuant to 11 U.S.C. § 105 and denied that they had taken any action that unreasonably or vexatiously multiplied the proceedings. They also alleged in the response that they had not been properly served with the Motion for Contempt, that the sale by the trustee had only been a sale of the bankruptcy estate's interest in the L&H Suit, and that Parker was free to prosecute his personal claims against L&H, claims that had accrued postpetition under Kentucky state law.

6

At the scheduled June 1, 2006 hearing, Mueller requested that if the bankruptcy court were to impose sanctions, that it impose such sanctions on him alone and not Parker, since any decision by Parker to go forward with the state court action was based on Mueller's advice. Subsequently, on August 1, 2006, the bankruptcy court entered a Memorandum Opinion and Order finding Mueller in contempt of court for his willful violation of the Sale Order and imposing sanctions on him in the amount of $2,000, payable to the clerk of the court.[3] The court noted in the memorandum that it had previously determined in connection with the revocation of the notice of abandonment that the L&H Suit was an asset of the bankruptcy estate; that the asset had thereafter been sold, with the sale having then been fully consummated; that there was nothing left to prosecute; and that notwithstanding the foregoing, Parker and Mueller had continued to maintain that the attorney malpractice claims remained viable. Observing that the same issues had been addressed and resolved in the Goodman Suit in which Mueller was a participant, the bankruptcy court concluded:

> Mueller therefore has absolutely no basis for the arguments he makes in the matter now before the court, and the continued employment of these arguments is disingenuous in the extreme and simply represents Mueller's attempt to squeeze blood from the malpractice turnip.
>
> Mueller knows that his contention that the Debtor retains personal attorney malpractice claims that he may continue to prosecute in state court is groundless. Further, the court believes that Mueller has willfully chosen to violate the Order of Sale, his word games in regard to the lack of "an express and equivocal command to perform a particular act, or to refrain from performing a particular act, . . ." notwithstanding.

(Apt. App. 101-02.)

On August 10, 2006, Mueller timely appealed the bankruptcy court's order.

---

[3] Although the court raised the issue of attorney fees as a possible sanction pursuant to 28 U.S.C. § 1927 in the show cause order, the court's order awarding sanction was based on Mueller's "willful violation of the Order of Sale," and the $2,000 sanction amount was ordered to be paid to the clerk. Thus, it does not appear that the court awarded attorney's fees pursuant to § 1927, which authorizes the imposition of attorney fees against an attorney who unreasonably and vexatiously multiples the proceedings in a case in federal court.

# IV. DISCUSSION

Mueller first argues that the bankruptcy court failed to acquire personal jurisdiction over him because L&H did not satisfy the service of process requirements pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure. Rule 9020 directs that Rule 9014 governs motions for contempt and, as a consequence, establishes that such motions should follow the same procedures as contested matters.[4] Pursuant to Rule 9014(b), a contempt motion must be served in the manner provided by Rule 7004.[5] Relevant to the case at hand, Rule 7004 authorizes service of a contested motion generally by either personal service, first class mail, or publication. The crux of Mueller's argument is that the bankruptcy court lacked personal jurisdiction over him because L&H violated Rule 7004 by serving only on Mueller a contempt motion seeking relief against both Parker and Mueller and by serving Mueller electronically.

The bankruptcy court's memorandum opinion did not address this issue, and transcripts of the hearings are not included in the record on appeal. However, Mueller and Parker's response to the Motion for Contempt did not raise the issue of ineffective service, and there is no indication that Mueller went forward with either the preliminary hearing or the final hearing under protest due to the court's alleged lack of jurisdiction. As such, any argument based on ineffective service was waived by Mueller's failure to timely raise the issue. *See United States v. 51 Pieces of Real Prop., Roswell, N.M.*, 17 F.3d 1306, 1314 (10th Cir. 1994) (failure to object to court's exercise of personal jurisdiction in the first response waives defense)*. See also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (explaining that personal jurisdiction can be waived and an individual may submit to the jurisdiction of the court by appearance); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1138 n.5 (6th Cir. 1991) (finding that the Michigan Employment Security Commission waived any defects in personal jurisdiction by appearing before both the bankruptcy court and the district court to argue the merits of the debtors motion for order enforcing the bankruptcy court's order confirming the reorganization plan).

---

[4] Rule 9020 states that, "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."

[5] Rule 9014(b) states, in relevant part, that, "[t]he motion shall be served in the manner provided for service of a summons and complaint by Rule 7004."

Moreover, it appears that Mueller waived any alleged noncompliance with Rule 7004 and/or consented to electronic service when he registered with the federal bankruptcy court's ECF system. The ECF Administrative Procedures for the Eastern District of Kentucky state the following at section I. B.(3):

> ELECTRONIC NOTICE AND SERVICE; WAIVERS: As to all documents properly filed and served electronically, registration as a Filing User constitutes (a) a waiver of the right to receive notice or service by first class mail or personal delivery; and (b) consent to electronic service pursuant to applicable Local Rule or Standing Order except with regard to service of a summons and complaint under Rule 7004 of the Federal Rules of Bankruptcy Procedure and any other applicable rule or statue pursuant to which service by mail is not permitted. Waiver and consent pursuant to (a) and (b) of this paragraph applies to notice of the entry of an order or judgment under Rule 9022 of the Federal Rules of Bankruptcy Procedure.

(Ape. App. 48.) Accordingly, Mueller's argument that the court did not have personal jurisdiction over him is without merit.[6]

Mueller's second argument is based on the alleged invalidity of the Sale Order. According to Mueller, sales of malpractice claims are prohibited by Kentucky public policy. Although Mueller acknowledges that Parker's bankruptcy estate acquired any malpractice claim held by Parker as of the date of his bankruptcy filing, Mueller asserts that the trustee possessed the claim subject to the same limitations as state law imposes on Parker. Simply stated, Mueller contends that because Parker was prohibited by Kentucky law from selling his lawyer-malpractice claims, the trustee likewise was prohibited. As such, Mueller concludes that the sale of the L&H Claim was void, and therefore he cannot be held in contempt for violating the Sale Order.

Regardless of the validity of Mueller's public policy argument, it is mistimed and not properly before this Panel. Neither Parker nor Mueller objected to the proposed sale by auction of the debtor's interest in the L&H Suit, nor did they object to the motion seeking approval of the auction sale. Similarly, they did not appeal the Sale Order. "The law is fairly well-settled that 'an order confirming a sale of assets is considered a final judgment.'" *Fischer v. Third Nat'l Bank (In re Fischer)*, 184 B.R. 293, 301 (Bankr. M.D. Tenn. 1995) (quoting *Cedar Island Builders, Inc. v.*

---

[6] As to Mueller's argument based on the alleged failure to serve Parker properly, the Panel must conclude that consideration of this issue is precluded by the fact that no order of contempt was entered against Parker.

*S. County Sand & Gravel, Inc.*, 151 B.R. 298 (D.R.I. 1993)). Because the applicable appeal period has expired, the Sale Order is final and, therefore, is not subject to the collateral attack Mueller is attempting in this case. *See*, *e.g.*, *Mickowski v. Visi-Trak Worldwide, LLC*, 321 F. Supp. 2d 885, 898 (N.D. Ohio 2004) (citing *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012 (7th Cir. 1988) (holding that "the order confirming the sale of assets under § 363 of the Bankruptcy Code was a final appealable order that could not be attacked by a separate suit"). Accordingly, Mueller's argument in this regard must be rejected.

Additionally, to the extent that Mueller's argument challenges the bankruptcy court's subject matter jurisdiction to enter the Sale Order, even the issue of subject matter jurisdiction may not be reopened in a collateral attack. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-78, 60 S. Ct. 317, 319-20 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 171-72, 59 S. Ct. 134, 137-38 (1938); *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 258-59 (6th Cir. 1983). "This rule also applies if a party had an opportunity to contest subject matter jurisdiction and failed to do so." *Sweeton v. Brown*, 944 F.2d 905 (Table), 1991 WL 181751, *6 (6th Cir. Sept. 17, 1991). As the Supreme Court explained:

> It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined.

*Stoll*, 305 U.S. at 172. It was therefore incumbent upon Parker to raise the issue of the bankruptcy court's subject matter jurisdiction to enter the Sale Order in the direct proceedings relating to the Motion to Approve Sale. The issue cannot be revisited in the context of this collateral proceeding.

In a similar vein, Mueller contends that the order finding him in contempt is invalid because the L&H Suit never constituted a part of the bankruptcy estate. Mueller asserts that under Kentucky state law a lawyer-malpractice claim does not accrue or ripen until damages are incurred. Because the appeal of the case in which L&H represented Parker did not end until June 1, 2004, almost two years after Parker filed for bankruptcy, Mueller maintains that Parker's cause of action against L&H only came into existence postpetition and therefore the trustee had no interest in the L&H Suit. According to Mueller, "[b]ecause Trustee Brock had no interest in the claims . . . and those claims never formed a part of the bankruptcy estate, Lawyers Mutual and [L&H] purchased nothing from

10

Trustee Brock at the auction on August 10, 2005." (Apt. Br. 43). Based on this analysis, Mueller argues that he could not have violated the Sale Order because any action taken by him was with respect to Parker's postpetition malpractice claim, which was not the subject of the Sale Order.

Again, this Panel's consideration of this argument is precluded by the finality of the Sale Order. Notwithstanding Mueller's contention as to when Parker's claim against L&H arose, it is clear that the sale by the trustee was a sale of Parker's entire interest in the L&H Suit. The trustee's motion to approve the sale sought "an Order of the Court approving the 11 USC 363 public auction sale of the debtor's interest in a legal malpractice claim against [L&H] styled Robert E. Parker and Peggy Parker vs. Howard Keith Hall, Michael Lucas and Lucas & Hall, Civil Action No. 05-CI-00435 . . . ." Similarly, the Sale Order, entitled Order Approving Sale of Malpractice Claim, provided:

> The Trustee's 11 USC 363 public auction sale of debtor's interest in a legal malpractice claim against Hon. Howard Keith Hall, Hon. Michael Lucas and Lucas and Hall styled Robert E. Parker and Peggy Parker vs. Howard Keith Hall, Michael Lucas and Lucas & Hall, Civil Action No. 05-CI-00435, Pike Circuit Court, Division No. I, Pike County, Kentucky, to Lawyers Mutual Insurance Company . . . for the sum of TEN THOUSAND TWO HUNDRED DOLLARS ($10,200.00) is hereby approved.

Any assertion by Parker that the bankruptcy court had no authority to sell his interest in the L&H Suit because it arose postpetition should have been raised during the sale process.[7] The sale cannot now be attacked collaterally by Mueller.

Furthermore, Mueller's arguments are misplaced. In *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511 (1966), the Supreme Court held that a loss-carryback refund claim was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as 'property' . . . ." *Id*. at 380. The broad

---

[7] The bankruptcy court stated in its August 1, 2006 memorandum opinion that it had determined in connection with the revocation of the notice of abandonment that Parker's claim against L&H was an asset of the bankruptcy estate. The docket filings in connection with that determination were not designated for the record on appeal by either party. Regardless of whether the court made this ruling in connection with the notice of abandonment revocation or subsequently during the sale process, it is clear that Parker and his agent Mueller are precluded from collaterally attacking the court's ruling in the context of the contempt motion.

11

definition of "property of the estate" in 11 U.S.C. § 541(a) supports this interpretation. "By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000) (quoting *In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984)). Consequently, the question in this case is not whether the malpractice claim accrued, based on the moment the last element of the cause of action accrued, prior to Parker filing bankruptcy, but whether the malpractice claim is sufficiently rooted in Parker's prebankruptcy past to constitute property of the estate.

Although *Segal* involved issues of accrual under federal tax law and not state law, courts have applied the rationale to the latter type of cases. The Sixth Circuit Court of Appeals has not yet spoken on this issue, but a number of other courts have held that legal claims sufficiently rooted in a debtor's prepetition past are property of that debtor's bankruptcy estate. *See*, *e.g.*, *Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A. v. Alvarez (In re Alvarez)*, 224 F.3d 1273 (11th Cir. 2000) (holding that the debtor's cause of action arose directly from his interactions with a law firm prior to filing, thus it constituted property of his estate); *In re Tomaiolo*, 205 B.R. 10, 14 (Bankr. D. Mass. 1997) (holding that claims are property of the bankruptcy estate despite not having accrued by the time of the bankruptcy filing); *Winick & Rich, P.C. v. Strada Design Assocs., Inc. (In re Strada Design Assocs., Inc.)*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005) ("Section 541(a) is not restricted by state law concepts such as when a cause of action ripens or a statute of limitations begins to run, and 'property of the estate' may include claims that were inchoate on the petition date."); *In re Richards*, 249 B.R. at 861 ("Therefore, the Court must conclude that in determining whether a claim is property of the bankruptcy estate, the test is not the date that the claim accrues under state law . . ."); *In re J.E. Marion, Inc.*, 199 B.R. 635, 637 (Bankr. S.D. Tex. 1996) (finding that legal malpractice claims against the debtor's bankruptcy counsel were property of the bankruptcy estate); *Ellwanger v. Budsberg (In re Ellwanger)*, 140 B.R. 891 (Bankr. W.D. Wash. 1992) (holding that bankruptcy estate includes a contingent claim accruing upon completion of an appeal).

Although Mueller attempts to distinguish the facts in *Segal* from the case at hand, his argument is not persuasive. Mueller contends primarily that the debtor in *Segal* had an existing

12

interest at the time of filing bankruptcy, while Parker could not have had such an interest because Kentucky law dictated that the malpractice claim did not come into existence until two years after he filed his chapter 7 petition. Mueller, however, does not provide any legal support for this outcome as, indeed, none appears to exist.

Parker listed the malpractice claim against L&H on his bankruptcy schedules as a possible asset of the estate pending the appeal of the state court judgment. Further, the alleged negligent conduct by L&H occurred prepetition. According to the record, Parker's primary motivation for filing bankruptcy was to avoid the $165,000 judgment entered against him while being represented by L&H. In light of the uniform application by other courts of the principles announced in *Segal*, the facts demonstrate that the malpractice claim against L&H is sufficiently rooted in Parker's prepetition past to be part of his bankruptcy estate pursuant to § 541(a).

Mueller's last arguments in this appeal are the ones he initially raised before the bankruptcy court, that the Sale Order was not specific and definite requiring him to perform or refrain from performing any act and that, in any event, he took no steps in violation of the Sale Order. According to Mueller, instead of providing express commands or prohibitions, the Sale Order did nothing more than declare "that Lawyers Mutual has property rights in something." (Apt. Br. 38.) Mueller denies that any reasonable person would read the Sale Order as a prohibition on corresponding about or prosecuting the L&H Suit, even assuming that his January 11, 2006 letter constituted such a prosecution. According to Mueller, "[b]etween May 27, 2005, and the time the bankruptcy court entered its contempt order, [he] took no steps to move to final disposition any issue in [the L&H Suit]." *Id.*

The bankruptcy court may hold parties and/or their attorneys in contempt pursuant to 11 U.S.C. § 105(a) which states as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

13

The Sixth Circuit Court of Appeals has stated that:

> A litigant may be held in contempt if his adversary shows by clear and convincing evidence that "he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."

*Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998) (quoting *Glover v. Johnson*, 934 F. 2d 703, 707 (6th Cir. 1991)).  As explained in *Corpus Juris Secundum*:

> The court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order.  The provisions alleged to have been violated must be clear and definite.  A finding of contempt should not be made unless the order violated is clear and explicit and the act complained of is clearly proscribed.  The judge must find a clear and undoubted disobedience of a clear and unequivocal command.
>
> In this connection, the party alleged to have disobeyed the order must be able to ascertain from the four corners of the order what acts are required or forbidden. . . . Any ambiguities or omissions in the order must be construed in favor of the defendant.

C.J.S. *Contempt* § 14 (2007) (internal citations omitted).  *See also In re Safety-Kleen*, 331 B.R. 605, 608 (Bankr. D. Del. 2005) ("[A] person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden.") (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1006 (3d Cir. 1972)).

Based on the foregoing standard, this Panel must conclude that a finding of contempt should not have been made.  All that the Sale Order did was approve the trustee's public auction sale of the debtor's interest in the L&H Suit.  The order did  not require Parker or Mueller, or any party for that matter, "to perform or refrain from performing a particular act or acts." *Glover*, 138 F.3d at 244. The act complained of, Mueller's alleged continued prosecution of the L&H Suit, was not "clearly proscribed" in the Sale Order, nor was there a "clear and unequivocal command" that would have given Parker or his agent Mueller "fair warning that his acts were forbidden."

A case somewhat similar to the instant one is *In re Dorado Marine, Inc.*, 343 B.R. 711 (Bankr. M.D. Fla. 2006), wherein the bankruptcy court, in an adversary proceeding to determine the extent, validity, and priority of certain interests in the debtor's boat, concluded that prospective buyer Kollenbaum had no interest in the boat because he had rejected the purchase contract, but that nonetheless he was entitled to an equitable lien in the amount he had paid toward the boat's

14

construction, with such lien attaching to the proceeds from the debtor's proposed sale of the boat to another party. *Id.* at 712. When the president of the debtor deposited the funds from the sale into the debtor's DIP account without paying them over to Kollenbaum, Kollenbaum filed a motion asking that the president be held in contempt of the court's order. The bankruptcy court refused to do so, holding that the order in question was not sufficiently definite and specific as to constitute the underlying basis of a finding of civil contempt. "The [Order] merely establish[es] Kollenbaum's right to an equitable lien; [it does] not specifically direct [the debtor's president] or the Debtor to pay any net proceeds of the sale to Kollenbaum." *Id.* at 713.

Similarly, in the instant case, the Sale Order simply approved the proposed sale of the debtor's property and thus, established the property interests of the parties. There was no specific directive that the debtor not interfere with the sale or that he take no action in continued prosecution of the L&H Suit.

Notwithstanding the foregoing, L&H cites two decisions in its brief for the proposition that "[w]illful violations of an order of sale can result in contempt." (Ape. Br. 27.) The first cited case, *In re Bailey & Assocs., Inc.*, 2005 WL 147055 (Bankr. C.D. Ill. Jan. 19, 2005), is readily distinguishable from the present case because the sale order therein, which authorized the sale of the debtors' assets to Textron, explicitly "stayed, restrained and enjoined" any form of demand or claim against Textron arising out of the sale of the assets. Thus, the respondents in that case were in direct violation of the express terms of the court's sale order when they commenced an action against Textron. *Id.* at *1.

The second case cited by L&H, *In re Baker*, 195 B.R. 309 (Bankr. D.N.J. 1996), does support the proposition that a sale order may constitute the basis for a finding of contempt. While this Panel respectfully disagrees with the outcome of that case because the sale order did not command the respondent to take or refrain from taking a specific action, there was clear and convincing evidence in that case that the respondent intentionally interfered with and prevented the consummation of the sale by the closing date specified in the order by physically removing and asserting control over some of the sale items. *Id.* at 318.

15

In the present case, the Panel is not convinced that Mueller's actions constituted a clear and convincing violation of the Sale Order even if the order were deemed a sufficiently specific and direct command that Parker and his attorney refrain from prosecuting the L&H Suit in light of the sale of Parker's interest. The sole basis of the contempt finding against Mueller was the January 11, 2006 letter written by him. This letter was in response to a letter received by Mueller from counsel for L&H in which counsel had apparently stated that the trustee's sale had "effectively extinguished" Parker's malpractice claims. In his responsive letter, Mueller disputed this legal conclusion, stating that he would appeal any ruling by the state court to that effect, and invited counsel to contact him to discuss how to raise, and then resolve, the issue.[8] Although implicit in this statement is the assertion that Mueller intends in some fashion to raise the issue before the state court, such statement of intent is a step removed from actual continued prosecution of the L&H Suit. While Mueller was clearly incorrect in his analysis of the law as previously demonstrated, the Sale Order did not preclude him from articulating that argument to counsel for L&H and offering to discuss resolution of the issue.

This Panel is aware that at the time the bankruptcy court entered the contempt order against Mueller, the court had previously addressed and rejected, in the adversary proceeding brought by Goodman to enjoin Parker's continued prosecution of that action, the same arguments advanced by Mueller herein as to whether Parker retained an interest in the legal-malpractice claims after the trustee's sale. In its August 1, 2006 memorandum opinion finding Mueller in contempt, the bankruptcy court referenced its rejection of these arguments in connection with its issuance of a permanent injunction on February 23, 2006, and noted that on June 15, 2006, the district court had affirmed the bankruptcy court's ruling, stating "Parker's alleged claims against Goodman for negligence or legal malpractice were property of the bankruptcy estate and were properly sold—lock, stock, and barrel—to Lawyers Mutual and purchased on behalf of Goodman by authority of the bankruptcy judge's September 8, 2005, Sale Order." The bankruptcy court cited these prior rulings in support of its conclusion that Mueller had "absolutely no basis for the arguments he makes" and that "the continued employment of these arguments is disingenuous in the extreme."

---

[8] Muller also states in the letter that he plans to move forward with Ms. Parker's claims of lawyer malpractice, which of course would not be a violation of the Sale Order since only Mr. Parker's interest was sold by the trustee.

16

However, both the bankruptcy court's ruling in the Goodman adversary proceeding and the district court's affirmance of that ruling had not yet taken place at the time Mueller wrote his January 11, 2006 letter. As such, they should not have been considered in determining whether Mueller's letter, which merely raised the legal arguments in the first instance, was contemptuous. Accordingly, we conclude that the bankruptcy court abused its discretion in this regard.

As a final note, the Panel empathizes with the bankruptcy court's expression of frustration with Mueller that permeates the court's memorandum opinion. Notwithstanding the numerous times that the bankruptcy court had rejected the assertion that Parker continued to possess an interest in the legal malpractice claims, Mueller continued to collaterally assert that Parker's personal interests in the claims had not been sold. In fact, at the oral argument in this case, in response to questioning from the Panel, Mueller vehemently maintained that the bankruptcy court had no authority or jurisdiction to sell the claims and that it was not even necessary for Parker to have objected to the sales because the Sale Order was invalid and of no effect.[9] As previously noted, even if the bankruptcy court were without subject matter jurisdiction, it was incumbent upon Parker to object to the sale of his interest in the L&H Suit. His failure to do so precludes a collateral attack. His or Mueller's continued assertion of that position, other than in a direct appeal of this Panel's decision, would be inappropriate.

---

[9] The transcript of the oral argument reveals that when asked as to why the debtor did not object to the sales of his legal malpractice claims, Mueller responded:

> Because I don't have an obligation to challenge directly an unlawful, improper, unconstitutional order. I can challenge any order that exceeds the bounds of jurisdiction of a court collaterally in any other proceeding. And that's what we did.
>
> So the argument this is the first time I've raised these issues [,] I have pounded the table with the argument from the first day I appeared in Bankruptcy Court that the Court lacked jurisdiction to do what it was about to do, repeatedly. Though I didn't articulate the argument in exactly those terms, that is the same terms as I articulate in this brief, I have repeatedly told the Bankruptcy Court they had no authority because the claims did not exist. I have repeatedly told the Bankruptcy Court you cannot sell that which is not part of the bankruptcy estate. And the fact that the Court did it, I don't have to pursue [11 U.S.C. §] 363. The benefit of estoppel given by [§] 363(m) presumes that the [§] 363 order is valid in the first place. If it's invalid, no benefit.

## V. CONCLUSION

Because we conclude that Mueller's January 11, 2006 letter was not a "clear and undoubted disobedience of a clear and unequivocal command" in the Sale Order,  the bankruptcy court's order finding Mueller in contempt of the Sale Order and awarding sanctions must be REVERSED.